(No. 38675.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD BERNATOWICZ, Plaintiff in Error.

*Opinion filed September 23, 1966.*

STEPHEN L. SEFTENBERG, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and CARMEN SPERANZA, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

By consolidated writs of error, the defendant, Edward Bernatowicz, seeks review of two convictions for crimes of armed robbery, and of the dismissal of his petition for post-conviction relief in respect of such convictions. Constitutional questions give us jurisdiction.

During the early morning hours of March 4, 1963, Grover C. Elmore, Jr., a clerk on duty at the Presidential Inn Motel, 3922 S. Harlem Avenue, Lyons, Illinois, was held up and robbed of $88 of his employer's money by a bandit armed with a gun. One week later, at approximately 2:00 A.M. on March 11, 1963, a second robbery occurred in which $62.50 in cash, a quantity of stamps and a Victor adding machine were taken. Elmore was again on duty. A man whom he recognized as the perpetrator of the prior robbery alighted from a car in the parking lot and approached the motel. He immediately telephoned the apartment of the motel owner and, just as he completed the call, the robber came up to the desk, drew a gun and demanded money. After Elmore had turned over the contents of the cash register, he was forced to walk to a powder room and was ordered to lie on the floor for ten minutes under threat of being shot. When he thought he heard the robber leave the building, he returned to the lobby and there encountered two Lyons police officers who had come to the premises in response to a call that a robbery was in progress. At about the same time Elmore saw the robber running across the parking lot and pointed him out to the officers, but the robber was able to reach his car and drive away.

The Lyons police immediately pursued in their own vehicle and were soon joined by four other police cars in a prolonged, high speed chase during which numerous shots were fired at the fleeing car. It came to an abrupt halt when the robber's car crashed into a police car set up as a road block, and the first officers at the scene found the defendant

wedged behind the steering wheel and suffering from a bullet wound in the neck. A Victor adding machine was found in the rear seat of the car and, upon searching the defendant's person, the officers found in his pockets a roll of bills totaling $52, and a loaded .32 calibre automatic pistol. A short time later, at a hospital where defendant had been removed for treatment, 32 one-cent postage stamps and a wallet containing approximately $169 were taken from his person. Elmore, upon being brought to the hospital, identified the defendant, as well as the gun, and subsequently identified the adding machine as the one taken from the motel.

Defendant, who was represented by the Public Defender and accepted the latter's services without objection, was indicted for both robberies and was first tried by a jury for the crime of March 11, 1963. A verdict of guilty was returned and, after a hearing in aggravation and mitigation, defendant was sentenced to the penitentiary for a term of not less than fifteen nor more than thirty years. On the same date he pleaded guilty to the armed robbery of March 4, 1963, and received an identical sentence, to run concurrently with the first.

The substance of the indictments returned against defendant was that he had, "within Cook County, Illinois," committed armed robbery by taking currency and property from the person and presence of Elmore. Relying principally on *People* v. *Williams*, 30 Ill.2d 125, defendant contends that the indictments were insufficient to allege an offense because of their failure to give a more specific location of the site of the crimes charged. This contention is without merit. While the distinctions between the nature of the crimes involved cause the *Williams* case to have doubtful application here, it is enough to say that *Williams* has been expressly overruled by our later decisions in *People* v. *Reed*, 33 Ill.2d 535, and *People* v. *Blanchett*, 33 Ill.2d 527. Under authority of the latter decisions, whose analysis and logic

we deem it unnecessary to repeat, we hold that the indictments here were sufficiently specific to charge crimes, and that they are not subject to charges of constitutional infirmity.

On the ground that the incompetency of his counsel deprived him of due process of law, defendant charges that his counsel failed to prepare for trial and failed to adequately conduct the defense. We have examined the record carefully and cannot agree with these contentions. To warrant a reversal because of the incompetency of counsel, it must clearly appear not only that counsel performed his trial duties in an incompetent manner, but also that defendant was prejudiced thereby. (*People* v. *Morris*, 3 Ill.2d 437.) Testing the present record by these standards, it is apparent that counsel conducted himself and the defense as ably as the nature of the offenses permitted, and that the present contentions are largely an effort to have counsel adjudged incompetent by hindsight. (*Cf. People* v. *Wesley,* 30 Ill.2d 131.) The evidence against defendant in respect of the armed robbery on March 11 was direct and of a satisfactory nature. He admittedly told his defense counsel he had no alibi and could think of no witnesses, and it appears from the hearing in aggravation that defendant had a lengthy criminal record. Under the circumstances, the only avenue of defense open to counsel was the one he capably pursued, that of seeking to weaken the testimony of the prosecution's witnesses by cross-examination. Nor can we impute incompetency to counsel because he permitted defendant to plead guilty to the robbery of March 4. Once again his identification by Elmore was positive, and even now it is not suggested that there was alibi or other evidence which could have justified a jury trial. We conclude that defendant's representation was competent and effective, and that there was no denial of due process of law.

Within the foregoing point of argument defendant also suggests, as he pleaded in his post-conviction petition, that he was "intimidated" into entering his plea of guilty. The wrongful inducement of such a plea by deception or coercion is a denial of due process. (*People* v. *Thompson*, 19 Ill.2d 330.) Neither of these elements is present in this case. Rather, it is represented that the so-called "intimidation" consisted of defendant's loss of confidence in his counsel and defendant's fear that he would risk consecutive rather than concurrent sentences if he did not plead guilty. If the orderly administration of criminal justice is to survive, it is clear that such subjective and unexpressed grounds of intimidation cannot serve to support a claim of a denial of due process. Particularly is this so since the record, by which we are bound, shows that defendant persisted in his plea even though the trial court fully advised him of his rights and admonished him as to its consequences.

Defendant, although arrested on March 11, 1963, remained in a hospital for treatment of his bullet wound until March 14, on which date he was lodged in the county jail. He was not taken before a judicial officer until March 23, 1963, and it is now contended that his constitutional rights were infringed: (1) in that the delay "may well have prejudiced" defendant; and (2) in that the nine-day delay "constituted cruel and unusual punishment by informally extending defendant's sentence." We find little merit to either contention. Assuming, *arguendo*, that the detention was unreasonable, the allegation was insufficient to require a hearing, for we have held that mere illegal detention in the absence of other coercive circumstances does not constitute a denial of due process. (*People* v. *Price*, 24 Ill.2d 46.) There was no claim of such other circumstances here.

Finally, defendant contends that he was denied due process of law because he was without the assistance of

counsel upon the occasion of his preliminary hearing. This point, however, has been decided adversely to defendant's contention in *People* v. *Morris*, 30 Ill.2d 406, and in the absence of any showing that defendant was refused counsel, or in any way prejudiced by the lack thereof, we find no basis for saying that due process was denied. Based upon section 109—1(b) of the Code of Criminal Procedure, which took effect January 1, 1964, and which provides for advice as to the right to counsel and appointment of counsel on the occasion of preliminary examination, (Ill. Rev. Stat. 1963, chap. 38, arts. 100-126,) defendant asks that *Morris* be reconsidered and overruled. This we decline to do. The fact the legislature has seen fit to now require the matter of counsel to be resolved at the preliminary examination is not to say that due process requires it. Although the record of the preliminary examination is not before us, if one does exist, defendant states he then demanded the return of the money which the police had taken from him at the time of his arrest, and it is now contended that the refusal of his demand served to deny him the right to have counsel of his own choosing. However, the record shows that defendant represented to the court on arraignment that he was without funds, that he made no further demand for the return of his money, and that he accepted the appointment and services of the Public Defender without objection until now. Under these circumstances, defendant is in no position to claim that he was denied counsel of his choice. *People* v. *Merrieweather*, 11 Ill.2d 619.

The judgments of the circuit court of Cook County and its order denying the post-conviction petition are affirmed.

*Judgments and order affirmed.*