ADAMS *v.* ILLINOIS

No. 70–5038.  Argued December 7, 1971—Decided March 6, 1972

BRENNAN, J., announced the Court's judgment and delivered an opinion, in which STEWART and WHITE, JJ., joined.  BURGER, C. J., filed an opinion concurring in the result, *post,* p. 285.  BLACKMUN, J., filed a statement concurring in the result, *post,* p. 286.  DOUGLAS, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post,* p. 286.  POWELL and REHNQUIST, JJ., took no part in the consideration or decision of the case.

*Edward M. Genson* argued the cause for petitioner. With him on the brief were *Charles B. Evins, R. Eugene Pincham,* and *Sam Adam.*

*E. James Gildea* argued the cause for respondent.   On the brief were *William J. Scott,* Attorney General of

Illinois, *Joel M. Flaum,* First Assistant Attorney General, and *James B. Zagel* and *James R. Streicker,* Assistant Attorneys General.

MR. JUSTICE BRENNAN announced the judgment of the Court and an opinion, in which MR. JUSTICE STEWART and MR. JUSTICE WHITE join.

In *Coleman* v. *Alabama,* 399 U. S. 1, decided June 22, 1970, we held that a preliminary hearing is a critical stage of the criminal process at which the accused is constitutionally entitled to the assistance of counsel. This case presents the question whether that constitutional doctrine applies retroactively to preliminary hearings conducted prior to June 22, 1970.

The Circuit Court of Cook County, Illinois, conducted a preliminary hearing on February 10, 1967, on a charge against petitioner of selling heroin. Petitioner was not represented by counsel at the hearing. He was bound over to the grand jury, which indicted him. By pretrial motion he sought dismissal of the indictment on the ground that it was invalid because of the failure of the court to appoint counsel to represent him at the preliminary hearing. The motion was denied on May 3, 1967, on the authority of *People* v. *Morris,* 30 Ill. 2d 406, 197 N. E. 2d 433 (1964). In *Morris* the Illinois Supreme Court held that the Illinois preliminary hearing was not a critical stage at which the accused had a constitutional right to the assistance of counsel. Petitioner's conviction was affirmed by the Illinois Supreme Court, which rejected petitioner's argument that the later *Coleman* decision required reversal. The court acknowledged that its *Morris* decision was superseded by *Coleman,*[1] but

---

[1] The Illinois Supreme Court stated, 46 Ill. 2d, at 205–206, 263 N. E. 2d, at 493,

"A preliminary hearing in Alabama, as in Illinois, has the purpose of determining whether there is probable cause to believe an offense

held that *Coleman* applied only to preliminary hearings conducted after June 22, 1970, the date *Coleman* was decided. 46 Ill. 2d 200, 263 N. E. 2d 490 (1970). We granted certiorari limited to the question of the retroactivity of *Coleman.* 401 U. S. 953 (1971). We affirm.

The criteria guiding resolution of the question of the retroactivity of new constitutional rules of criminal procedure "implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Stovall* v. *Denno,* 388 U. S. 293, 297 (1967). We have given complete retroactive effect to the new rule, regardless of good-faith reliance by law enforcement authorities or the degree of impact on the administration of justice, where the "major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials . . . ." *Williams* v. *United States,* 401 U. S. 646, 653 (1971). Examples are the right to counsel at trial, *Gideon* v.

---

has been committed by the defendant . . . . In both States the hearing is not a required step in the process of prosecution, as the prosecutor may seek an indictment directly from the grand jury, thereby eliminating the proceeding. . . . In neither State is a defendant required to offer defenses at the hearing at the risk of being precluded from raising them at the trial itself. . . . We conclude that the preliminary hearing procedures of Alabama and Illinois are substantially alike and we must consider because of *Coleman* v. *Alabama* . . . that a preliminary hearing conducted pursuant to section 109–3 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 109–3) is a 'critical stage' in this State's criminal process so as to entitle the accused to the assistance of counsel."

A right to a preliminary hearing has been constitutionally established, effective July 1, 1971. Illinois Constitution of 1970, Art. I, § 7.

*Wainwright,* 372 U. S. 335 (1963); on appeal, *Douglas* v. *California,* 372 U. S. 353 (1963); or at some forms of arraignment, *Hamilton* v. *Alabama,* 368 U. S. 52 (1961). See generally *Stovall* v. *Denno, supra,* at 297–298; *Williams* v. *United States, supra,* at 653 n. 6.

However, "the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree," *Johnson* v. *New Jersey,* 384 U. S. 719, 728–729 (1966); it is a "question of probabilities." *Id.,* at 729. Thus, although the rule requiring the assistance of counsel at a lineup, *United States* v. *Wade,* 388 U. S. 218 (1967); *Gilbert* v. *California,* 388 U. S. 263 (1967), is "aimed at avoiding unfairness at the trial by enhancing the reliability of the fact-finding process in the area of identification evidence," we held that the probabilities of infecting the integrity of the truth-determining process by denial of counsel at the lineup were sufficiently less than the omission of counsel at the trial itself or on appeal that those probabilities "must in turn be weighed against the prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice." *Stovall* v. *Denno, supra,* at 298.

We hold that similarly the role of counsel at the preliminary hearing differs sufficiently from the role of counsel at trial in its impact upon the integrity of the factfinding process as to require the weighing of the probabilities of such infection against the elements of prior justified reliance and the impact of retroactivity upon the administration of criminal justice. We may lay aside the functions of counsel at the preliminary hearing that do not bear on the factfinding process at trial—counsel's help in persuading the court not to hold the accused for the grand jury or meanwhile to admit the accused to bail. *Coleman,* 399 U. S., at 9. Of counsel's other functions—to "fashion a vital impeach-

ment tool for use in cross-examination of the State's witnesses at the trial," to "discover the case the State has against his client," "making effective arguments for the accused on such matters as the necessity for an early psychiatric examination . . . ," *ibid.*—impeachment and discovery may make particularly significant contribution to the enhancement of the factfinding process, since they materially affect an accused's ability to present an effective defense at trial. But because of limitations upon the use of the preliminary hearing for discovery and impeachment purposes, counsel cannot be as effectual as at trial or on appeal. The authority of the court to terminate the preliminary hearing once probable cause is established, see *People* v. *Bonner,* 37 Ill. 2d 553, 560, 229 N. E. 2d 527, 531 (1967), means that the degree of discovery obtained will vary depending on how much evidence the presiding judge receives. Too, the preliminary hearing is held at an early stage of the prosecution when the evidence ultimately gathered by the prosecution may not be complete. Cf. S. Rep. No. 371, 90th Cong., 1st Sess., 33, on amending 18 U. S. C. § 3060. Counsel must also avail himself of alternative procedures, always a significant factor to be weighed in the scales. *Johnson* v. *New Jersey,* 384 U. S., at 730. Illinois provides, for example, bills of particulars and discovery of the names of prosecution witnesses. Ill. Rev. Stat., c. 38, §§ 114–2, 114–9, 114–10 (1971). Pretrial statements of prosecution witnesses may also be obtained for use for impeachment purposes. See, *e. g., People* v. *Johnson,* 31 Ill. 2d 602, 203 N. E. 2d 399 (1964).

We accordingly agree with the conclusion of the Illinois Supreme Court, "On this scale of probabilities, we judge that the lack of counsel at a preliminary hearing involves less danger to 'the integrity of the truth-determining process at trial' than the omission of counsel at the trial

itself or on appeal.    Such danger is not ordinarily greater, we consider, at a preliminary hearing at which the accused is unrepresented than at a pretrial line-up or at an interrogation conducted without presence of an attorney."    46 Ill. 2d, at 207, 263 N. E. 2d, at 494.[2]

We turn then to weighing the probabilities that the denial of counsel at the preliminary hearing will infect the integrity of the factfinding process at trial against the prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice.    We do not think that law enforcement authorities are to be faulted for not anticipating *Coleman.* There was no clear foreshadowing of that rule.    A contrary inference was not unreasonable in light of our decisions in *Hamilton* v. *Alabama,* 368 U. S. 52, and *White* v. *Maryland,* 373 U. S. 59 (1963).    *Hamilton* denominated the arraignment stage in Alabama critical because defenses not asserted at that stage might be forever lost. *White* held that an uncounseled plea of guilty at a Maryland preliminary hearing could not be introduced by the State at trial.    Many state courts not unreasonably regarded *Hamilton* and *White* as fashioning limited constitutional rules governing preliminary hearings.    See, *e. g.,* the decision of the Illinois Supreme Court in *People* v. *Morris,* 30 Ill. 2d 406, 197 N. E. 2d 433.    Moreover, a

---

[2] Accord: *Phillips* v. *North Carolina,* 433 F. 2d 659, 662 (1970), where the Court of Appeals for the Fourth Circuit observed:

"To be sure, if a preliminary hearing is held, the accused gains important rights and advantages that can be effectively exercised only through his attorney.    Counsel's function, however, differs from his function at trial.    Broadly speaking, his role at the preliminary hearing is to advise, observe, discover the facts, and probe the state's case.    In this respect he serves in somewhat the same capacity as counsel at lineups and interrogations, which are both pretrial stages of criminal proceedings where the right to counsel has not been held retroactive."

number of courts, including all of the federal courts of appeals had concluded that the preliminary hearing was not a critical stage entitling an accused to the assistance of counsel.[3] It is thus clear there has been understandable and widespread reliance upon this view by law enforcement officials and the courts.

It follows that retroactive application of *Coleman* "would seriously disrupt the administration of our criminal laws." *Johnson* v. *New Jersey*, 384 U. S., at 731. At the very least, the processing of current criminal calendars would be disrupted while hearings were conducted to determine whether the denial of counsel at the preliminary hearing constituted harmless error. Cf. *Stovall* v. *Denno*, 388 U. S., at 300. The task of conducting such hearings would be immeasurably complicated by the need to construct a record of what occurred. In Illinois, for example, no court reporter was present at pre-*Coleman* preliminary hearings and the proceedings are therefore not recorded. See *People* v. *Givans*, 83 Ill. App. 2d 423, 228 N. E. 2d 123 (1967). In addition, relief from this constitutional error would require not merely a new trial but also, at least in Illinois, a new preliminary hearing and a new indictment. The impact upon the administration of the criminal law of that requirement needs no elaboration. Therefore, here also, "[t]he unusual force of the countervailing considerations strengthens our con-

---

[3] *Pagan Cancel* v. *Delgado*, 408 F. 2d 1018 (CA1 1969); *United States ex rel. Cooper* v. *Reincke*, 333 F. 2d 608 (CA2 1964); *United States ex rel. Budd* v. *Maroney*, 398 F. 2d 806 (CA3 1968); *DeToro* v. *Pepersack*, 332 F. 2d 341 (CA4 1964); *Walker* v. *Wainwright*, 409 F. 2d 1311 (CA5 1969); *Waddy* v. *Heer*, 383 F. 2d 789 (CA6 1967); *Butler* v. *Burke*, 360 F. 2d 118 (CA7 1966); *Pope* v. *Swenson*, 395 F. 2d 321 (CA8 1968); *Wilson* v. *Harris*, 351 F. 2d 840 (CA9 1965); *Latham* v. *Crouse*, 320 F. 2d 120 (CA10 1963); *Headen* v. *United States*, 115 U. S. App. D. C. 81, 317 F. 2d 145 (1963).

clusion in favor of prospective application." *Stovall* v. *Denno, supra,* at 299.

We do not regard petitioner's case as calling for a contrary conclusion merely because he made a pretrial motion to dismiss the indictment, or because his conviction is before us on direct review. "[T]he factors of reliance and burden on the administration of justice [are] entitled to such overriding significance as to make [those] distinction[s] unsupportable." *Stovall* v. *Denno, supra,* at 300–301. Petitioner makes no claim of actual prejudice constituting a denial of due process. Such a claim would entitle him to a hearing without regard to today's holding that *Coleman* is not to be retroactively applied. See *People* v. *Bernatowicz,* 35 Ill. 2d 192, 198, 220 N. E. 2d 745, 748 (1966); *People* v. *Bonner,* 37 Ill. 2d 553, 561, 229 N. E. 2d 527, 532 (1967).

*Affirmed.*

MR. JUSTICE POWELL and MR. JUSTICE REHNQUIST took no part in the consideration or decision of this case.

MR. CHIEF JUSTICE BURGER, concurring in the result.

I concur in the result but maintain the view expressed in my dissent in *Coleman* v. *Alabama,* 399 U. S. 1, 21 (1970), that while counsel should be provided at preliminary hearings as a matter of sound policy and judicial administration, there is no *constitutional* requirement that it be done. As I noted in *Coleman,* the constitutional command applies to "criminal prosecutions," not to the shifting notion of "critical stages." Nor can I join in the view that it is a function of constitutional adjudication to assure that defense counsel can "fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial" or "discover the case the State has against his client."

399 U. S., at 9. Nothing could better illustrate the extra-constitutional scope of *Coleman* than the interpretation of it now to explain why we do not make it "retroactive."

Mr. Justice Blackmun, concurring in the result.

Inasmuch as I feel that *Coleman* v. *Alabama,* 399 U. S. 1 (1970), was wrongly decided, I concur in the result.

Mr. Justice Douglas, with whom Mr. Justice Marshall concurs, dissenting.

Until *Linkletter* v. *Walker,* 381 U. S. 618 (1965), the Court traditionally applied new constitutional criminal procedure standards to cases finalized and police practices operative before the promulgation of the new rules.[1] *Linkletter,* however, was the cradle of a new doctrine of nonretroactivity which exempts from relief the earlier victims of unconstitutional police practices. I have disagreed on numerous occasions with applications of various brands of this doctrine and I continue my dissent in this case.[2] My own view is that even-handed justice requires either prospectivity only [3] or complete retro-

---

[1] *E. g., Eskridge* v. *Washington Prison Board,* 357 U. S. 214 (1958); *Gideon* v. *Wainwright,* 372 U. S. 335 (1963); *Jackson* v. *Denno,* 378 U. S. 368 (1964), (see also *Desist* v. *United States,* 394 U. S. 244, 250 n. 15 (1969)); *Reck* v. *Pate,* 367 U. S. 433 (1961).

[2] *Linkletter* v. *Walker,* 381 U. S. 618, 640 (1965); *Tehan* v. *Shott,* 382 U. S. 406, 419 (1966); *Johnson* v. *New Jersey,* 384 U. S. 719, 736 (1966); *Stovall* v. *Denno,* 388 U. S. 293, 302 (1967); *DeStefano* v. *Woods,* 392 U. S. 631, 635 (1968); *Desist* v. *United States,* 394 U. S. 244, 255 (1969); *Halliday* v. *United States,* 394 U. S. 831, 835 (1969); *Mackey* v. *United States,* 401 U. S. 667, 713 (1971).

[3] It was suggested in *Stovall* v. *Denno, supra,* at 301, that a prospective-only holding would violate the Art. III requirement of case or controversy. But see *England* v. *Louisiana State Board of Medical Examiners,* 375 U. S. 411, 422 (1964), where the Court exempted the petitioner from its holding. See also *Johnson* v. *New Jersey, supra,* at 733.

activity. To me there is something inherently invidious as Mr. Justice Harlan phrased it, in "[s]imply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule . . . ." *Mackey* v. *United States,* 401 U. S. 667, 679 (1971) (separate opinion). I agree with his critique, *id.,* at 695, that the purported distinction between those rules that are designed to improve the factfinding process and those designed to further other values was "inherently intractable" and to illustrate his point he adverted to the Court's difficulty in reconciling with its rule such nonretroactivity cases as *Johnson* v. *New Jersey,* 384 U. S. 719 (1966); *Stovall* v. *Denno,* 388 U. S. 293 (1967), and *DeStefano* v. *Woods,* 392 U. S. 631 (1968), all of which held nonretroactive decisions designed, in part, to enhance the integrity of the factfinding process. He also questioned the workability of any rule which requires a guess as to "whether a particular decision has really announced a 'new' rule at all or whether it has simply applied a well-established constitutional principle." *Mackey* v. *United States, supra,* at 695; *Desist* v. *United States,* 394 U. S. 244, 263 (1969). For example, as I suggest *infra,* at 293–295, a serious question arises in this case whether *Coleman* v. *Alabama,* 399 U. S. 1 (1970), should have been fully anticipated by state judicial authorities.[4]

---

[4] While I subscribe to many of the reservations expressed by Mr. Justice Harlan, I nonetheless find his alternative rule of retrospectivity unsatisfactory. In *Mackey* v. *United States,* 401 U. S. 667, 675 (1971) (separate opinion), he suggested that constitutional decisions be retroactive as to all nonfinal convictions pending at the time of the particular holdings, but that prisoners seeking habeas relief should generally be treated according to the law prevailing at the time of their convictions. It is on this latter score that I am troubled. Surely it would be no more facile a task to unearth the

Additionally, it is curious that the plurality rule is sensitive to "reasonable reliance" on prior standards by law enforcement agencies but is unconcerned about the

state of law of years past than it is to assign, under the plurality's test, a degree of reasonableness to reliance on older standards by law enforcement agencies. Where the question has arisen in this Court, we have treated habeas petitioners by the modern law, not by older rules. See *Reck* v. *Pate,* 367 U. S. 433 (1961) (habeas permitted on basis of current law to release prisoner convicted in 1936). See also *Gideon* v. *Wainwright,* 372 U. S. 335 (1963), and *Jackson* v. *Denno,* 378 U. S. 368 (1964), announcing new rules in habeas cases. Moreover, as has been concluded by Professor Schwartz, the drawing of a bright line between federal review through habeas and certiorari would be unjustified:

"Where federal review of the constitutionality of state criminal proceedings is concerned, the making of so sharp a distinction between review on certiorari and habeas corpus is unwarranted. There is often no significant difference with respect to age and potential staleness between the two types of cases. Rather than coming years after the conviction is final, habeas corpus is often but a routine step in the criminal defense process—the normal step taken after certiorari has been denied. Sometimes, it actually replaces certiorari, for in *Fay* v. *Noia* [372 U. S. 391 (1963)] the Supreme Court advised criminal defendants to skip certiorari and to petition directly to the federal district court for habeas corpus. Even in situations in which a defendant goes through all the direct review steps, it is often nothing more than fortuitous circumstance which determines whether his case is still on direct review or is on collateral attack when the new decision comes down.

"The difference between review on certiorari and habeas corpus seems even less significant when we look to function and actual operation. Although it is sometimes considered the 'normal' method for obtaining federal review of state convictions, certiorari does not provide, as the Court remarked in *Fay* v. *Noia,* 'a normal appellate channel in any sense comparable to the writ of error,' for the Court must limit its jurisdiction to questions that have significance beyond the immediate case. Habeas corpus, on the other hand, facilitates the Court's task in those cases it does take by providing a record focused exclusively on the federal constitutional question. Habeas corpus has thus become the primary vehicle for immediate federal

unfairness of arbitrarily granting relief to Coleman but denying it to Adams.

Given my disagreement with the plurality's rule, I am reluctant even to attempt to apply it, but even by its own

---

review of state convictions. Further, this development has resulted in a gradual shrinking of what were once significant operational differences between review on certiorari and habeas corpus, such as the relationship to the state proceeding, the degree of independent fact-finding authority, and the significance of the defendant's violation of state procedural rules. From both the functional and the operational standpoints, then, it is justifiable to conclude that 'the distinctions between habeas corpus proceedings and direct review are largely illusory.'

"In addition, drawing a line between review [on] certiorari and habeas corpus undercuts the Supreme Court's bypass suggestion in *Fay v. Noia*. If a defendant has doubts about the retroactivity of any claim which might both affect him and be subject to Court review in the foreseeable future, he will be well advised always to ignore the Court's suggestion and to apply for certiorari. Many months may pass before his petition for certiorari is rejected, and so long as it is pending, he will be entitled to receive the benefits of any intervening decisions. As soon as he files his petition for habeas corpus, however, even if he does so only a day after the last state court order is entered, he will have forfeited his right to such benefits. He will thus be put to an election between delayed relief and no relief at all.

"The inequity of drawing a sharp distinction between direct review and habeas corpus is, however, only one aspect of a broader inequity: treating two prisoners deprived of the same fundamental constitutional right differently merely because the Supreme Court did not get around to enunciating a particular right until after the conviction of one of them had become final. Professor Mishkin argues that worry about this point ignores 'the reasons for barring current convictions and . . . the fact that the new rule in no way undermines the earlier determinations of factual guilt.' To him, it is as if a guilty person were to complain of his lot because others equally guilty were not prosecuted. And though he recognizes that such claims are sometimes sustained, he concludes that 'there are certainly rational bases for drawing a line between current convictions and

terms, the balancing approach would appear to require that we hold *Coleman* retroactive. This conclusion reinforces my fear that the process is too imprecise as a neutral guide for either this Court or the lower courts and will invariably permit retroactivity decisions to turn on predilections, not principles.

## I

In applying the rule, I am first troubled by the plurality's adoption of the finding of the court below that: "On [the] scale of probabilities, we judge that the lack of counsel at a preliminary hearing involves less danger to 'the integrity of the truth-determining process at trial' than the omission of counsel at the trial itself or on appeal." *Ante,* at 282–283. The same might have been said of the right to counsel at sentencing, *Mempa*

---

those previously final,' citing excerpts from Professors Bator and Amsterdam on finality. Professor Mishkin's sharp distinction between collateral attack and direct review thus rests ultimately on finality considerations.

"Finality considerations seem especially weak where two cases differ only in the fact that one is still on 'direct' review whereas the other is not. Where the two cases are far apart in age, finality considerations are admittedly more persuasive. But even there, the mere timing of the Court's decision to grant federal protection to a fundamental right hardly seems to be a sufficient basis for unequal treatment; after all, in most instances it was not the older prisoner's fault that the Court did not render its decision earlier. To some extent, of course, the question comes down to a choice between the competing values of equality and repose, and choices of this sort are notoriously immune to reasoned resolution. It will be suggested below, however, that the threat to finality considerations from complete retroactivity appears to have been greatly exaggerated, and if this suggestion is well taken, Professor Mishkin's rejection of equality is especially untenable." Schwartz, Retroactivity, Reliability, and Due Process: A Reply to Professor Mishkin, 33 U. Chi. L. Rev. 719, 731–734 (1966).

v. *Rhay*, 389 U. S. 128 (1967), at certain arraignments, *Hamilton* v. *Alabama*, 368 U. S. 52 (1961), or at preliminary hearings where guilty pleas were taken, *White* v. *Maryland*, 373 U. S. 59 (1963), all of which have been held retroactive.[5]

Rather than reaching for these analogies, however, the plurality suggests that the danger to the integrity of the truth-determining process is no greater here than at a pretrial lineup or at an interrogation conducted without counsel. In relying on these analogies, the plurality gives short shrift to the argument that "in practice [the preliminary] hearing may provide the defense with the most valuable discovery technique available to him," *Wheeler* v. *Flood*, 269 F. Supp. 194, 198 (EDNY 1967), an objective which is not so readily achievable at lineups and interrogations at which counsel serves only a protective function. The State's access to superior investigative resources and its ability to keep its case secret until trial normally puts the defendant at a clear disadvantage.[6]

---

[5] See *McConnell* v. *Rhay*, 393 U. S. 2 (1968) (*Mempa* retroactive); *Arsenault* v. *Massachusetts*, 393 U. S. 5 (1968) (*White* and *Hamilton* retroactive).

[6] The investigative advantage enjoyed by the State extends beyond the prohibition of the common law against criminal discovery. It also results from the fact that the police are usually first at the scene of the crime, have access to witnesses with fresher recollections, are authorized to confiscate removable evidence, are positioned to conduct laboratory tests on physical evidence, enjoy a communication channel with a complete undercover world of secret informers, have an air of legitimacy which is conducive to cooperation by witnesses, and have numerous ways to compel testimony even before trial. See generally Norton, Discovery in the Criminal Process, 61 J. Crim. L., C. & P. S. 11, 13–14 (1970); Comment, Criminal Law: Pre-Trial Discovery—The Right of an Indigent's Counsel to Inspect Police Reports, 14 St. Louis U. L. J. 310 (1969); Moore, Criminal Discovery, 19 Hastings L. J. 865 (1968); A State Statute to Liberalize Criminal Discovery, 4 Harv. J. Legis. 105 (1967); Comment, Disclosure and Discovery in Criminal Cases: Where Are We

In light of this disparity, one important service the preliminary hearing performs is to permit counsel to penetrate the evidence offered by the prosecution at the hearing, to test its strengths and weaknesses (without the presence of a jury), to learn the names and addresses of witnesses, to focus upon the key factual issues in the upcoming trial, and to preserve testimony for impeachment purposes. The alternative discovery techniques suggested now by the plurality are puny in comparison. A bill of particulars can usually reach only prosecution witnesses' names, and it may be cold comfort to defense counsel to learn that he can obtain pretrial statements of prosecution witnesses inasmuch as such statements are often prepared from the State's viewpoint and have not been subjected to cross-examination. And in many States such statements are not discoverable.

Finally, when read in light of *Coleman*'s exaltation of the virtues of counseled preliminary hearings, the present language of the plurality may lend itself to a "credibility gap" between it and those involved in the administration of the criminal process. "Plainly," said the *Coleman* Court, "the guiding hand of counsel at the preliminary hearing is essential to protect the indigent accused against an erroneous or improper prosecution," *Coleman* v. *Alabama, supra,* at 9, and: "The inability of the indigent accused on his own to realize these advantages of a lawyer's assistance compels the conclusion that the Alabama preliminary hearing is a 'critical stage' of the State's criminal process at which the accused, is 'as much entitled to such aid [of counsel] . . . as at the trial itself.' " *Id.,* at 9–10. It will

---

Headed?, 6 Duquesne U. L. Rev. 41 (1967); Bibliography: Criminal Discovery, 5 Tulsa L. J. 207 (1968); Symposium: Discovery in Federal Criminal Cases, 33 F. R. D. 53 (1963); Brennan, Criminal Prosecution: Sporting Event or Quest For Truth?, 1963 Wash. U. L. Q. 279.

now appear somewhat anomalous that the right to counsel at a preliminary hearing is fundamental enough to be incorporated into the Fourteenth Amendment but not fundamental enough to warrant application to the victims of previous unconstitutional conduct.[7]

## II

I also believe that the plurality's case for establishing good-faith reliance on "the old standards" by state judicial systems ignores important developments in the right-to-counsel cases prior to *Coleman*. First of all, no decision of this Court had held that counsel need not be afforded at the preliminary hearing stage. Therefore, to build a case for good-faith reliance the State must wring from our decision the negative implication that uncounseled probable-cause hearings were permissible. Such negative implications are found, says the plurality, in *Hamilton* v. *Alabama,* 368 U. S. 52 (1961), and *White* v. *Maryland,* 373 U. S. 59 (1963), cases reversing convictions obtained through the use at trial of uncounseled guilty pleas entered at preliminary hearings. Neither of those decisions, however, faced the question of whether reversal

---

[7] I am aware that the retroactivity theory presently commanding a Court permits a distinction between rules designed to fortify the reliability of verdicts and rules designed to protect other values. But here, as the plurality suggests, three of the four functions counsel might serve at preliminary hearings would appear to enhance the factfinding process: discovery of the State's case, preserving of testimony of both hostile and favorable witnesses, and obtaining release on bail. Although the plurality appears to discount the investigative advantage of being free on bail, I believe that this "traditional right to freedom before conviction permits the unhampered preparation of a defense." *Stack* v. *Boyle,* 342 U. S. 1, 4 (1951). See also *Kinney* v. *Lenon,* 425 F. 2d 209, 210 (CA9 1970), where the Court of Appeals found that "the appellant is the only person who can effectively prepare his own defense," because the incarcerated. accused was the only person who could recognize witnesses by sight who might have seen a scuffle.

was required on the facts of the instant case. And, though I have studied these two short opinions, I am unable, as is the plurality, to divine any hidden message to law enforcement agencies that we would permit the denial of counsel at preliminary hearings where guilty pleas were not taken. Rather, these cases reinforce, in my mind, the importance of counsel at every stage in the criminal process. In any event, by the time *Coleman* came down, it was clear, as Mr. Justice Harlan opined, albeit with some regret, that our holding was an inevitable consequence of prior case law:

> "If I felt free to consider this case upon a clean slate I would have voted to affirm these convictions. But—in light of the lengths to which the right to appointed counsel has been carried in recent decisions of this Court, see *Miranda* v. *Arizona,* 384 U. S. 436 (1966); *United States* v. *Wade,* 388 U. S. 218 (1967); *Gilbert* v. *California,* 388 U. S. 263 (1967); *Mathis* v. *United States,* 391 U. S. 1 (1968); and *Orozco* v. *Texas,* 394 U. S. 324 (1969)—I consider that course is not open to me with due regard for the way in which the adjudicatory process of this Court, as I conceive it, should work. . . .

> .    .    .    .    .

> "It would indeed be strange were this Court, having held a suspect or an accused entitled to counsel at such pretrial stages as 'in-custody' police investigation, whether at the station house (*Miranda*) or even in the home (*Orozco*), now to hold that he is left to fend for himself at the first formal confrontation in the courtroom." *Coleman* v. *Alabama, supra,* at 19–20 (separate opinion).[8]

---

[8] To this list might have been added *Roberts* v. *LaVallee,* 389 U. S. 40 (1967), holding that the State must provide an indigent with a preliminary hearing transcript in every circumstance in which the more affluent accused could obtain one.

Thus, in the instant case, at the times relevant, the State should have foreseen that the right to counsel attached to the probable-cause hearing.

## III

I also disagree that "[t]he impact upon the administration of the criminal law of [*Coleman* retroactivity] needs no elaboration." *Ante,* at 284. In the 19 months since *Coleman* was decided all new prosecutions have presumably followed it and we therefore need only be concerned, for impact purposes, with those state proceedings in which a preliminary hearing was held prior to June 1970. Inasmuch as the median state sentence served by felons when they are first released is about 20.9 months,[9] most pre-*Coleman* sentences would now be served and as a practical matter these former prisoners would not seek judicial review. Moreover, we may exclude from our consideration those 16 or more States that prior to *Coleman* routinely appointed counsel at or prior to preliminary hearings. See American Bar Association, Project on Standards for Criminal Justice, Providing Defense Services § 5.1 (Approved Draft 1968). Additionally, we may exclude from consideration the possibility of collateral challenges by federal prisoners inasmuch as counsel have routinely been present at preliminary hearings before federal commissioners.[10] See Fed. Rule Crim. Proc. 5 (b).

While there are some current prisoners who might challenge their confinements if *Coleman* were held retro-

---

[9] Federal Bureau of Prisons, National Prisoner Statistics—Characteristics of State Prisoners, 1960, pp. 26–27 (1965).

[10] In this respect the instant case further differs from *Stovall* v. *Denno,* 388 U. S., at 299, where it was found that: "The law enforcement officials of the Federal Government and of all 50 States have heretofore proceeded on the premise that the Constitution did not require the presence of counsel at pretrial confrontations for identification."

spective, many of these attacks would probably fail under the harmless-error rule of *Chapman* v. *California,* 386 U. S. 18 (1967). The plurality opinion suggests that conducting such harmless-error proceedings would be onerous. One reason given is that in Illinois, for example, preliminary hearings were not recorded before *Coleman.* That assertion may not be entirely accurate in light of the fact that this very record contains a transcript of Adams' preliminary hearing. Perhaps, as the respondent seems to concede,[11] transcripts were made available in other Illinois cases. That is the more reasonable assumption in light of our holding in *Roberts* v. *LaVallee,* 389 U. S. 40 (1967), that the State must provide a preliminary hearing transcript to an indigent in every circumstance in which the more affluent accused could obtain one.

Even where a transcript was not available, however, a prisoner might be able to show at an evidentiary hearing that he was prejudiced by a particular need for discovery, by the inability to preserve the testimony of either an adverse or favorable witness, or by the inability to secure his release on bail in order to assist in the preparation of his defense.[12] Courts are accustomed, of course, to assessing claims of prejudice without the aid of transcripts of previous proceedings, such as is required by *Jackson* v. *Denno,* 378 U. S. 368 (1964), or *Townsend* v. *Sain,* 372 U. S. 293 (1963). Indeed, in *Coleman* we remanded for a determination of whether the failure to appoint counsel had been harmless error. 399 U. S., at 11. Not every *Coleman* claim would warrant an evidentiary hearing. Many attacks might be disposed of summarily, such as a challenge to a conviction resulting from a counseled guilty plea entered before any preju-

---

[11] Brief for Respondent 33.
[12] See n. 7, *supra.*

dice had materialized from an uncounseled preliminary hearing. See *Procunier* v. *Atchley,* 400 U. S. 446 (1971).

Even *Stovall* v. *Denno,* 388 U. S., at 299, the analogy frequently invoked by the plurality, held out the possibility of collateral relief in cases where prisoners could show that their lineups had imposed "such unfairness that [they] infringed [their] right to due process of law." Conducting *Coleman* harmless-error hearings would not appear to be any more burdensome on the administration of criminal justice than have *Stovall* "fundamental fairness" post-conviction proceedings.

In any event, whatever litigation might follow a holding of *Coleman* retrospectivity must be considered part of the price we pay for former failures to provide fair procedures.