**Arsenio Nazario MARTINEZ, Petitioner,**

v.

**Gerardo DELGADO, Warden of the Penitentiary of the Commonwealth of Puerto Rico, Respondent.**

**Civ. No. 899–71.**

United States District Court,
D. Puerto Rico.

Dec. 4, 1973.

Dr. Santos P. Amadeo, Rio Piedras, P. R., for petitioner.

Office of the Attorney General, Ulpiano Crespo, Sp. Pros. Atty., San Juan, P. R., for respondent.

## OPINION AND ORDER

TOLEDO, District Judge.

This case comes before the Court upon a petition for a writ of habeas corpus, pursuant to the provisions of Title 28, United States Code, Section 2241.

The record reflects petitioner, Arsenio Nazario Martinez, was sentenced to life imprisonment after a conviction for a first degree murder arising out of a crime committed on September 28, 1962. The conviction by the Superior Court of Puerto Rico, Bayamón Part, was unsuccessfully appealed to the Puerto Rico Supreme Court, People v. Arsenio Nazario Nieves, 100 D.P.R. (1971 C.A. 96, decided on November 17, 1971).

A brief statement of the facts leading to petitioner's conviction shows that on September 18, 1962 petitioner, still with the bloody knife in his hand, turned himself over to a policeman he found on the street and admitted to the killing of Fernando Luis Pons Moller. The policeman took petitioner to a hospital to be cured of a knife wound in his hand. Upon leaving the hospital he was taken to the Police Station and from there to the District Attorney's Office, where he spoke with Prosecuting Attorney Grajales for about seven minutes before being referred to the Office of the Assistant District Attorney, Ramon R. Cabrera. Mr. Cabrera advised petitioner of his right to remain silent, and that if he testified he should do it freely and voluntarily, without having been threatened or coerced, that he had not been made any offer of any kind whatsoever, and that his testimony could be used against him. Before Assistant District Attorney Cabrera, petitioner delivered his confession and signed the transcript of the same.

Petitioner raises the constitutionality of his conviction and sentence, maintaining that such judgment rendered against him must be reversed because he was deprived of his right to assistance of counsel during the preliminary hearing held before the prosecuting attorney, the latter acting as agent of the examining magistrate and by the examining magistrate himself, who on the basis of petitioner's confession taken by Assistant District Attorney Cabrera, and from the testimonies of other witnesses, issued a warrant of arrest ordering the imprisonment of petitioner. Such contention is articulated by petitioner in the following way:

"Because petitioner, when brought by the Police before prosecuting attorney Cabrera, had ceased to be a mere suspect and was already an accused. And when the prosecutor examined him acting in the triple role of an arm of the committing magistrate, a law enforcement officer and a one-man grand jury to obtain a confession, he violated petitioner's right under the Sixth Amendment to the Federal Constitution to have the assistance of counsel at this stage as established by the Supreme Court of the United States in White v. Maryland, 373 U.S. 59 [83 S.Ct. 1050, 10 L.Ed.2d 193] (1963); Arsenault v. Massachusetts, 393 U.S. 5 [89 S.Ct. 35, 21 L.Ed.2d 5] (1969); Pointer v. Texas, 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923] (1965); and Coleman v. Alabama, 399 U.S. 1 [90 S.Ct. 1999, 26 L.Ed.2d 387] (1970). This is so because petitioner at no time did expressly and intelligently waive his right to assistance of counsel."

Petitioner also alleges having being "deprived of his liberty without due process of law in violation of the Fifth

Amendment of the Constitution of the United States in view that prosecuting attorney Ramón R. Čabrera, as a law enforcement officer and one-man grand jury, was devoid of the neutrality and detachment required of a magistrate, Coolidge v. New Hampshire, 403 U.S. 443 [91 S.Ct. 2022, 29 L.Ed.2d 564] (1971), while at the same time playing a controlling and decisive role in the determination of probable cause for arrest, the fixing of bail to petitioner and in determining, as well, probable cause for prosecution."

The crux of the matter is the determination of whether the proceeding in which the petitioner made his confession was a prosecutorial interrogation, sometimes referred to in the record by petitioner as a "preliminary examination", or whether it should be considered a preliminary hearing, wherein the prosecuting attorney acted, as petitioner claims, in the triple role of an arm of the committing magistrate, a law enforcement officer and a·one-man grand jury. Were we to decide that the case at bar falls under the first situation, Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), would avail petitioner of nothing; *Escobedo* not being retroactive. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L. Ed.2d 882 (1966). We must therefore see if petitioner has successfully established that the act during which he talked with prosecuting attorney Grajales, and confessed before prosecuting attorney Cabrera, constituted a preliminary hearing held by the prosecuting attorneys as agents of the examining magistrate.

█ Ever since July 25, 1952, the Puerto Rican prosecuting attorneys were divested of magisterial powers such as to determine probable cause, issue warrants of arrest, and fix and take bail. For a complete historical summary of the functions of the prosecuting attorney, see People v. Superior Court, 75 P. R.R. 501 (1953), wherein it was indicated that the purpose of the 1952 Consti-

tution for the Commonwealth of Puerto Rico was to deprive the prosecuting attorneys of their powers as magistrates, and that, therefore, an information may not be based on the opinion of the prosecuting attorney, acting as magistrate, to the effect that there is probable cause for filing the information. The court explicitly stated at pages 514–515:

> " * * * If after investigation of an offense the prosecuting attorney comes to the conclusion that there is sufficient cause to believe that the defendant is guilty of the commission of that offense. * * * it is his duty to submit to the magistrate evidence of probable cause of the commission of such public offense, the magistrate being the only officer empowered by the Constitution and the law to determine whether there exists probable cause to justify the issuance by the magistrate of a bench warrant. The prosecuting attorney has been deprived of that power, the prosecuting attorney shall submit to the magistrate evidence of probable cause of the commission of a public offense by oath or affirmation which might lead the magistrate to believe that the defendant has committed the offense charged, a hearing being unnecessary in such case. Cf. Guadalupe v. Bravo, Warden, 71 P.R.R. 913. Although the prosecuting attorney is at present without power to issue warrants of arrest or to fix and accept bail, he still has power to file informations if 'he solemnly believes that there exists just cause for the filing of this information'."

To the same effect, see also People v. Ortiz, 76 P.R.R. 241 (1954), People v. Quiñonez, 76 P.R.R. 894 (1954) and Lopez v. Superior Court, 79 P.R.R. 470 (1956). It should also be noted that Rule 23 of the Rules of Criminal Procedure for the Commonwealth of Puerto Rico—requiring the holding of a preliminary hearing in all felony cases before the filing of the information by the prosecuting attorney—did not come into

effect until July 1, 1964, almost two years after the date of the facts before us.

An examination of the record leads us to determine that at the confrontation when petitioner confessed the prosecutor was not acting in his magisterial capacity. The prosecuting attorney submitted to a magistrate the evidence which he had gathered during the investigation and he felt constituted the elements of a crime. It was only after the magistrate had received the evidence that he determined probable cause and proceeded to fix bail and issue a warrant of arrest.

■ We cannot, therefore, conclude that the prosecuting attorney, in receiving petitioner and taking his confession, was necessarily acting, as petitioner claims, in the triple arm of the committing magistrate, a law enforcement officer and a one-man grand jury.

Thus, we disagree with petitioner's contention to the effect that Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970),—wherein the Supreme Court ruled that a "preliminary hearing" is a critical stage of the criminal process at which the accused is constitutionally entitled to assistance of counsel—applies to this case. Even if it were to apply, Adams v. Illinois, 405 U. S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972), has established that Coleman v. Alabama, supra, does not apply retroactively to preliminary hearings conducted before June 22, 1970, when *Coleman* was decided.

■ At the same time, since Johnson v. New Jersey, supra, held that neither Escobedo v. Illinois, supra, nor Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was to apply retroactively, petitioner need not at the time of the written confession be warned that he had a right to be represented by counsel at that stage of the proceedings. Escute v. Delgado (1 Cir. 1971), 439 F.2d 891.

■ Moreover, even if we were to decide that the proceeding wherein the prosecutor obtained the confession constituted a "preliminary hearing", the *Coleman* decision points out to four factors which would have forced us to reach the same result. The court said in *Coleman*:

"The determination whether the hearing is a 'critical stage' requiring the provision of counsel depends, as noted, upon an analysis whether potential substantial prejudice to defendant's rights inheres in the . . . confrontation and the ability of counsel to help avoid that prejudice." United States v. Wade, 388 U.S. 218 [87 S.Ct. 1926, 18 L.Ed.2d 1149] (1967) . . . . First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weakness in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matter as the necessity for an early psychiatric examination or bail."

Considering that before petitioner confessed to the prosecutors he had also confessed to policeman Reyes, we are inclined to believe that the absence of a defense attorney who, at best, would have prevented the voluntary confession at the proceeding, was inconsequential. In other words, counsel for petitioner could not have carried out the purposes for attendant counsel as outlined in *Coleman*, supra. See Escute v. Delgado, supra; Cancel v. Delgado (1 Cir. 1969), 408 F.2d 1018. In Chin Kee v. Massa-

chusetts (1 Cir. 1969), 407 F.2d 10, the Court said at page 14:

"Where the stage of the proceedings is only marginal or arguably 'critical', a reviewing court is permitted to scrutinize the possibility of prejudice arising from the diminution of tactical alternatives available to subsequently appointed counsel and, if such possibility is found beyond a reasonable doubt merely speculative or hypothetical, to declare the absence of counsel harmless error."

We see no conceivable prejudicial effect on petitioner's deprivation of his primary right to counsel at the proceeding where he submitted the confessions.

Wherefore, the Court hereby orders, adjudges and decrees, that petitioner's petition for a writ of habeas corpus be and the same is hereby dismissed.