**Dossie X. FAISON, Jr., Appellant,**

v.

**Robert F. ZAHRADNICK, Superintend-
ent of the Virginia State
Penitentiary, Appellee.**

No. 76–2446.

United States Court of Appeals,
Fourth Circuit.

Argued June 7, 1977.

Decided Oct. 13, 1977.

William F. Krebs, Third Year Law Student (Michael E. Geltner, Appellate Litigation Clinic, Washington, D. C., and Aurora C. Jose, Third Year Law Student, on brief), for appellant.

Linwood T. Wells, Jr., Asst. Atty. Gen., Richmond, Va. (Anthony Troy, Atty. Gen., Richmond, Va., on brief), for appellee.

Before WINTER, RUSSELL and WIDENER, Circuit Judges.

PER CURIAM:

The petitioner, a Virginia state prisoner convicted of robbery and abduction, sought *habeas* relief on the grounds that (1) he was unconstitutionally denied a transcript of his preliminary hearing, and that (2) identification testimony, in violation of constitutional standards, was admitted at trial. The District Court denied relief and we affirm.

We shall consider seriatim the two claims.

I

■ It was held in *Roberts v. LaVallee* (1967) 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41, that, if any criminal defendant, upon payment of a fee, can secure a transcript of his preliminary hearing, an indigent cannot under the equal protection clause be denied a like right to such a transcript merely because of his inability to pay the required fee. But the rule so stated presupposes that the testimony at the preliminary hearing has been officially transcribed and is available to the defendant upon the payment of the required fee.[1] In Virginia, however, the testimony at a preliminary hearing is transcribed only if the judge

---

1. In *Adams v. Illinois* (1972) 405 U.S. 278, 294, n. 8, 92 S.Ct. 916, 925, 31 L.Ed.2d 202, Justice Douglas, in his dissent, summarized *Roberts* as holding "that the State must provide an indigent with a preliminary hearing transcript in every circumstance in which the more affluent could attain one."

In *Britt v. North Carolina* (1971) 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400, the Court stated that *Roberts* and all the other related cases "establish the principle that the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense on appeal, *when those tools are available for a price to other prisoners.*" (Italics added)

As is seen, both statements condition the right of an indigent to a transcript upon the available "for a price" to other defendants o such a transcript.

directs that it be transcribed and "signed by the witnesses." If the judge directs that the testimony be transcribed and "signed by the witnesses," then, in that case *Roberts* would require that an indigent be furnished a transcript of such hearing without the payment of any fee. Where, on the other hand, the judge did not order the testimony to be "transcribed" and "signed by the witnesses" at the preliminary hearing, there is no official transcript available to anyone, with or without a fee, whether the defendant be affluent or an indigent; and in those circumstances, failure to furnish a transcript of the preliminary hearing to an indigent will not be a violation of the equal protection provision of the Fourteenth Amendment.[2] Such was the situation here. Whether the petitioner was indigent or rich, he could not secure a transcript of that hearing. The trial court did not therefore commit constitutional error in refusing on equal protection grounds to order that the petitioner be furnished a transcript of his

preliminary hearing without payment of a fee.[3]

## II

■ The defendant complains of the admission of his identification by the witness White. The latter was employed as a clerk in the drug store which was robbed. He was held at gunpoint during the robbery and was forced by the robbers to leave the drug store and accompany them for some time afterwards. The taller of the robbers was unmasked during the robbery and was later identified by White as Johnson; the shorter, later identified by White as the defendant Faison, had a light mask on during the robbery but he removed it after he left the drug store. After the robbers had fled for some distance through the woods and had arrived at an open area, they released White. The robbery occurred about 9:25 in the evening. Later in the evening the police authorities arrested the defend-

---

**2.** *See Sharbor v. Gathright* (W.D.Va.1969) 295 F.Supp. 386.

**3.** Many cases, particularly in the State courts, have addressed the right of an indigent to a transcript of his preliminary hearing. The result in those cases has turned basically on whether under the State law a transcript was available upon the payment of a fee. If it was not, a denial of such a transcript was not violative of the equal protection clause; conversely, it was. The first line of authorities is well illustrated by both the federal and state decisions dealing with Massachusetts practice, which corresponds roughly with that of Virginia. *See Britt v. McKenney* (1st Cir. 1976) 529 F.2d 44, 46, and *Commonwealth v. Britt* (1972) 362 Mass. 325, 285 N.E.2d 780, 782–3. In the latter case, Justice Braucher, after observing that Massachusetts does not require that the testimony at a preliminary (or probable cause) hearing be transcribed, said:

" * * * The poor are not entitled to better protection of the laws than the rich. Hence no question is presented as to denial of equal protection of the laws by reason of the statute."

To the same effect are: *State v. Harris* (1975) 27 N.C.App. 15, 217 S.E.2d 729, 731, appeal dismissed for want of a substantial constitutional question, 288 N.C. 512, 219 S.E.2d 347; *Williams v. Jasper* (1971) 287 Ala. 237, 250 So.2d 699, 701, *cert. denied* 250 So.2d 701; *McHale v. State* (Miss.1973) 284 So.2d 42, 44; *State v. Champ* (Mo.1972) 477 S.W.2d 81, 83.

On the other hand, if, either by statute or court rule, the testimony at the preliminary hearing must be transcribed and is available on payment of a fee—the situation in *Roberts* —the authorities sustain the indigent's right to a transcript. *People v. Montgomery* (1966) 18 N.Y.2d 993, 278 N.Y.S.2d 226, 224 N.E.2d 730; *State v. Lewis* (Iowa 1974) 215 N.W.2d 293; *State v. Apodaca* (1969) 80 N.M. 244, 453 P.2d 764; *Hawkins v. State* (Okl.Cr.App.1971) 486 P.2d 743. *See, also, Gardner v. United States* (1969) 132 U.S.App.D.C. 331, 407 F.2d 1266, 1268, *cert. denied* 395 U.S. 911, 89 S.Ct. 1757, 23 L.Ed.2d 225 (1969), and *Hunter v. District Court in & For Twentieth J.D.*, 184 Col. 238, 519 P.2d 941, both of which reached the same result on the basis of a court rule issued "under the supervisory power" of the Court over procedures in criminal actions. The theory on which all these cases proceed was stated by the Court in *Hawkins, supra,* 486 P.2d at 744:

"The purpose of the rule enunciated in *Waters v. State* [Okl.Cr., 454 P.2d 325] and *Roberts v. LaVallee,* * * * was to accord an indigent the same right to a transcript of the testimony taken at preliminary examination as that accorded to persons able to pay for such transcripts, * * *."

For authority that failure to transcribe a preliminary hearing is not a constitutional violation, *see, Britt v. McKenney, supra,* 529 F.2d at 47.

ant and Johnson and brought them to the station house. About 1:30 in the morning following, White was brought to the station and made a visual and voice identification of the defendant and Johnson as the robbers. This is the identification which the defendant challenges in his *habeas* petition.

We held in *Stanley v. Cox* (4th Cir. 1973) 486 F.2d 48 at 50–1, *cert. denied* 416 U.S. 958, 94 S.Ct. 1975, 40 L.Ed.2d 309 (1974) that a pre-trial show-up identification, such as that here, was not subject to any *per se* rule of invalidity but that its validity was to be determined on the basis of its reliability as established by the "totality of circumstances." That decision was approved by the Supreme Court in the recent case of *Manson v. Brathwaite* (1977) 432 U.S. 98, at p. 110, 97 S.Ct. 2243, 53 L.Ed.2d 140. Both in *Manson* and *Stanley*, the factors to be considered in determining reliability were stated. One was the "time between the crime and the confrontation." In *Manson*, the delay was two days; in this case, the delay was but four hours. Another factor was "the opportunity to view." It is true that, while in the drug store during the robbery, the defendant had concealed his face with a mask, White did observe his build, his attire, and other physical characteristics of the defendant. He noted the dark shoes the defendant had on, the black gloves and the light pants he wore, and the light hosiery mask he wore. The defendant spoke to him during the robbery and the two robbers engaged in conversation. When the robbers forced White to accompany them after the robbery, they took him to a wooded area. When they reached the wooded area, the masked robber took off his mask and threw it away. The three of them then proceeded through the woods for some five to eight minutes until they reached a clearing near a road. As they approached the road, a car was seen and White was forced to get down and to be quiet until it passed. During these times, White had ample opportunity to observe the faces of the two robbers as the three of them were proceeding through the woods and to note the voices of the two robbers as they talked. It is implausible to assume that during all the time the witness was held by the two robbers, he had no opportunity to observe closely their appearance. It was night but there were assuredly periods when their faces were clearly mirrored before him, especially since there were open areas in the woods they were traversing. That he was attentive—one of the other factors to be considered—is evidenced by his cataloguing of the attire and physical characteristics of the defendant. Moreover, there was never any uncertainty or hesitation in White's identification of the defendant and his companion. This is another factor, which under *Manson*, was to be considered.

The defendant would, however, find the reliability of the witness' identification fatally flawed by his inability some months later to identify the defendant in a line-up. But this argument overlooks the changes which the defendant in the meantime had made in his appearance. On the night of the robbery the defendant had hair coming down on both sides of his mouth and under his lip. When seen in the line-up, he was clean-shaven, had bleached his hair a "reddish" color and had begun to part his hair in the middle. The failure to identify the defendant after those significant changes in his appearance cannot weaken the reliability of a prompt show-up identification made within a few hours after the robbery when the witness had the opportunities that White had to observe the robbers and to listen to their voices and when his recollection of their faces was vivid in his mind. We find no error in the admission of the identification testimony of White.

The State argues, too, that the evidence of the defendant's guilt was overwhelming. There can be little dispute that the case against the defendant was a particularly strong one. We, however, find no necessity to consider this argument since we think it abundantly clear that the show-up identification was admissible.

III

The order of the District Court dismissing the petition for *habeas* relief is accordingly

AFFIRMED.