350 F.Supp. 403 (1972)
Lorin C. WEAVER et al., Plaintiffs,
v.
Eugene P. O'GRADY, Director, Ohio Department of Highway Safety, et al., Defendants.
Civ. No. 71-291.
United States District Court, S. D. Ohio, E. D.
October 27, 1972.
*404 *405 Earl Staelin, Toledo Legal Aid Society, Toledo, Ohio, Franklin A. Martens, Columbus, Ohio, for plaintiffs.
William J. Brown, Atty. Gen., Thomas V. Martin, Asst. Atty. Gen., Columbus, Ohio, for defendants.

OPINION AND ORDER
CARL B. RUBIN, District Judge.
This matter, which involves the constitutionality of various provisions of Ohio's Financial Responsibility Act, is before the Court on the briefs, stipulations, answers to interrogatories and admissions of the parties. The present action for injunctive and declaratory relief is authorized by 42 U.S.C. § 1983 to redress alleged deprivations under color of law of rights, privileges and immunities secured to the plaintiffs by the First, Ninth and Fourteenth Amendments, the Supremacy Clause of the United States Constitution, U.S.Const. Art. VI, cl. 2, and the Bankruptcy Act, 11 U.S.C. § 35. Jurisdiction is conferred upon the court by 28 U.S.C. § 1343(3), (4) and 28 U.S. C. § 2201.[1]
In an earlier Order dated December 15, 1971, this Court determined that the legal principles enunciated in Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) and Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), were applicable to the case at bar and made unnecessary the convocation of a three-judge court.
The plaintiffs in this class action[2] are composed of two distinct subclasses affected by Ohio's Financial Responsibility Act (hereinafter the Act), O.R.C. § 4509.01 et seq. The first subclass (hereinafter the first subclass) consists of approximately 37,000 persons who have been deprived of their rights to drivers' licenses because of a failure to satisfy judgments taken against them arising out of their involvement in an automobile accident.[3] Under O.R.C. § 4509.43 they are prevented from regaining their license even if the underlying judgment is discharged in bankruptcy. Members of the class allege that the Act violates the Supremacy Clause as interpreted *406 by the Court in Perez v. Campbell, supra.
The second subclass (hereinafter the second subclass) consists of 45,000 persons whose licenses have been suspended for failure to post the security deposit which is required by the Act. Members of this class have not yet been subject to judgment. They claim that under the holding of Bell v. Burson, supra, they should be entitled to a due process hearing, prior to suspension, at which they would have the opportunity of demonstrating that they will not be ultimately liable in judgment for the accident.[4]
The Ohio statutory scheme, as contained in O.R.C. §§ 4509.01 to 4509.99, is similar to statutes now in effect in most states and to the Georgia law reviewed by the Court in Bell v. Burson, supra. Most of the state laws were patterned after a statute first adopted by New Hampshire. See Vorys, The New Ohio Motor Vehicle Safety Responsibility Act, 50 O.O. 102 (1953). The Ohio act applies to owners and drivers of motor vehicles which are operated in Ohio and is administered by the defendants who are the State's Director of the Department of Highway Safety and its Registrar of the Bureau of Motor Vehicles. The act requires the driver of a motor vehicle which is involved in an accident to send a report of the accident to the Bureau of Motor Vehicles (hereinafter the Bureau) within thirty days of its occurrence. O. R.C. § 4509.06. The accident report form is prescribed by the Bureau. A person who is required to file a report and fails to do so may have his license suspended until a report is filed. O.R.C. § 4509.09.
If a driver of a motor vehicle involved in an accident returns a report showing that he does not have the required insurance, the Registrar of the Bureau of Motor Vehicles makes a determination as to the amount of security which he feels is sufficient to satisfy any judgment which might result from the accident against the uninsured driver of the motor vehicle, or the owner, or both. The prescribed accident report contains a space for an estimate of property damage and personal injury which is used to determine the amount of security. If any personal injury resulted, the amount of security has to be at least $500.00. O.R.C. § 4509.12.
Within 50 days from the receipt of an accident report the Registrar sends notice to the driver and/or owner of a motor vehicle who has not filed proof of responsibility advising him of the amount of security required to be deposited with the Registrar. The notice also advises him that failure to deposit the security will result in the suspension of his driver's license. O.R.C. Sec. 4509.13. If upon further investigation the Registrar finds the security to be excessive, he may reduce the amount required, but in no case can it be less than $500.00 if the accident resulted in personal injury. O. R.C. Sec. 4509.14. The security may be in the form of money, United States Bonds, state bonds, or municipal bonds, or a corporate surety bond. O.R.C. Sec. 4509.15.
There are certain exceptions to the security deposit requirement. These include, drivers or owners of motor vehicles where the only injury or damage was to the driver's vehicle, drivers or owners of motor vehicles legally parked, owners of motor vehicles which were being operated without the owner's permission, motor vehicles owned by the State of Ohio, motor vehicles used by a police officer responding to an emergency, and various other technical exceptions. O.R.C. Sec. 4509.19.
*407 A person may be relieved from the security deposit requirement if he gets a release from all parties, including insurance companies, which were involved in the accident. A covenant not to sue is also acceptable. O.R.C. Sec. 4509.21. Security requirements are only released upon a final adjudication of nonliability (O.R.C. Sec. 4509.22), or the payment in full of a judgment (O.R.C. Sec. 4509.23), or when the parties enter into a settlement agreement. If a settlement agreement is breached, the suspension is reinstated until the entire obligation is paid, or security is deposited with the Registrar, or until two years has elapsed following the breach of the agreement. O. R.C. Sec. 4509.24.
If a suspension is not terminated for one of the above reasons it remains in force until security is deposited or two years have elapsed since the date of the accident and "satisfactory evidence has been filed with the registrar of motor vehicles that during such period no action for damages arising out of the accident . . . has been instituted" or if there is a judgment, that it has been paid. O.R.C. Secs. 4509.26, 4509.29. An affidavit from the person under suspension stating that no action has been instituted or is pending is prima facie evidence for purposes of releasing the suspension.
If a judgment is taken against an individual subject to the financial responsibility law and remains unsatisfied for 30 days, then, upon the written request of the judgment creditor or his attorney, a copy of the judgment entry can be sent to the Bureau of Motor Vehicles. Upon receipt of the certified copy of the judgment the Registrar must suspend the driver's license and registration of the judgment debtor. O.R.C. Sec. 4509.37. The judgment creditor may consent to allow the judgment debtor to regain his driver's license and registration. O. R.C. Sec. 4509.38. If the Registrar determines that an insurer is obligated to pay the judgment then the judgment debtor's license is not suspended. O.R. C. Sec. 4509.39.
Once a motorist's driver's license and registration are suspended for failure to pay a judgment he cannot regain his license unless he obtains a stay of the judgment or satisfies it in full. He must get "proof of financial responsibility" and maintain it for three years, as well as successfully pass a driver's examination. O.R.C. Sec. 4509.40.
A judgment debtor may apply to the court to have the judgment paid in installments. When such permission is secured the judgment debtor may regain his driving rights if he can give proof of financial responsibility and maintain it for three years. If the judgment debtor fails to pay an installment his license is suspended until he satisfies the judgment. O.R.C. Sec. 4509.42. A discharge in bankruptcy does not alter the requirements for compliance with the Financial Responsibility Act. O.R.C. Sec. 4509.43.

II
It is apparent that to the extent O.R.C. § 4505.43 conflicts with the underlying policies of Section 17 of the Bankruptcy Act, 11 U.S.C. § 35, it is in violation of the Supremacy Clause of the Constitution, U.S.Const. Art. VI, cl. 2, and is therefore null and void. See Perez v. Campbell, supra; In re Schmelzer, 350 F.Supp. 429 (S.D.Ohio E.D. (1972). In Perez the Court struck down Section 28-1162, subsec. A of Arizona's Financial Responsibility Act because it conflicted with the above cited provision of the Bankruptcy Act. Former Section 28-1162, subsec. A of the Arizona statute was substantially similar in language and absolutely identical in thrust to O.R.C. § 4509.43.
For these reasons, the defendants concede that the Ohio provision is unconstitutional (Defendants' Brief of June 1, 1972, at 3) and this Court must agree. We note that the defendants have not attempted to enforce § 4509.43 for some time prior to our decision today. They have rewritten their forms to conform *408 to the Perez rule[5] and have conceded the retroactive application of the principle of that case. See, Defendants' Brief, supra, at 3.
The only question that remains as to the claim of Houser and his class is the form of notice that they are entitled to. Plaintiffs demand that since Perez is fully retroactive, the state should have the burden of mailing notice to the members of this class of their rights since the promulgation of the Perez rule. The defendants contend that they should not be expected to bear such a costly burden, despite the retroactivity of Perez. We will address the problem and the policies we must adhere to in making our determination of the question at 409-411 infra.
It is further apparent that to the extent the Ohio act fails to provide for an "appropriate" due process hearing on the issue of liability for the accident, prior to the suspension of driver's licenses belonging to members of the second subclass herein, it is constitutionally deficient. See Bell v. Burson, supra; Ortiz v. Depuy, 444 F.2d 429 (C.A.3, 1971); Salkay v. Williams, 445 F.2d 599 (C.A.5, 1971); Pollion v. Lewis, 332 F. Supp. 777 (N.D.Ill.1971) (three-judge court); Gayton v. Cassady, No. 5A69 C.A. 153 (W.D.Tex. June 30, 1971) (three-judge court); Gonzales v. Cassidy, No. 3-4881-A (N.D.Tex. September 28, 1971) (three-judge court); Bureau of Motor Vehicles v. McEntush, 29 Ohio Misc. 73, 278 N.E.2d 383 (C.P.Ham.Cty. 1971). As the Court stated in Bell v. Burson in its narrow holding: "[u]nder Georgia's present statutory scheme, before the State may deprive petitioner of his driver's license and vehicle registration it must provide a forum for the determination of the question whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident." Bell v. Burson, supra, 402 U.S. at 542, 91 S.Ct. at 1591 (emphasis supplied). The defendants now concede that the Ohio statute must conform to this due process standard, see Defendants' Brief, supra, at 4-5, and assert that they have in fact begun to administer it, in conformity with the rule set forth in Bell v. Burson, supra.[6] See Amended Form BMV 16-031 Rev. 5/72, attached as Appendix A to Defendants' Brief, supra; also see O. R.C. § 4509.03, .04.
*409 The plaintiffs contend, however, that the defendants have not conformed to the requirements of Bell v. Burson, supra; that they lack the statutory authority to hold pre-suspension due process hearing, and that therefore the entire act must be declared unconstitutional.
Even if this Court were to assume for the purpose of argument that plaintiffs' first two contentions are correct, in our opinion the proper remedy in that situation would not be the invalidation of the entire act. We would, rather, require the legislature to provide, by interstitial legislation, for the type of hearing required by evolving principles of the Due Process Clause of the Fourteenth Amendment. See Bell v. Burson, supra; Pollion v. Lewis, supra; also see Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); In re Gault, 387 U.S. 1, 87 S. Ct. 1428, 18 L.Ed.2d 527 (1967). As this Court noted recently, a cardinal principle of judicial review of legislation "is to save and not to destroy." See Wolman v. Essex, 342 F.Supp. 399, 419 n. 27 (S.D.Ohio E.D.1972) and cases cited therein; also see United States v. Jackson, 390 U.S. 570, 588, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968); N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U. S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937). The Supreme Court deliberately rejected the contention that the policies purportedly served by financial responsibility laws are inherently unconstitutional, even though alternative approaches, such as compulsory car insurance, may be available to the states. Bell v. Burson, supra, 402 U.S. at 542-543, 91 S.Ct. 1586.
In any event we specifically find that the Bureau can properly provide for pre-suspension hearings pursuant to its interpretation of O.R.C. §§ 4509.03 and .04, see City of Toledo v. Bernoir, 18 Ohio St.2d 94, 98, 247 N.E.2d 740, 744 (1969); and that its current procedures, see Appendix A, supra, to Defendants' Brief, are in compliance with the rule of Bell v. Burson and with general notions of the Due Process Clause. See Fuentes v. Shevin, 407 U.S. 67, 81, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Stanley v. Illinois, 405 U.S. 645, 647, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (per Harlan, J.); Armstrong v. Manzo, 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951); Mullane v. Central Hanover Bank and Trust Company, 339 U.S. 306, 313-314, 70 S. Ct. 652, 94 L.Ed. 865 (1950). Plaintiffs' contentions, insofar as they seek to have the entire act declared unconstitutional, are therefore without merit.
We must finally determine whether Bell v. Burson, supra, should be applied retroactively to all persons in the second subclass and further whether the defendants should be required to send notice of the rule of Perez v. Campbell, supra, which they concede is retroactive, to all members of the first subclass.
While the doctrine of the nonretroactive application of judicial precedent has been actively litigated recently in the area of the criminal process, see Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972); Ivan v. City of New York, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972); Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971); Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1048, 22 L.Ed.2d 248 (1969), its underlying policies are fully applicable to civil cases as well. See Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932); Chevron Oil Co. v. Huson, 404 *410 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1972); Phoenix v. Kolodziejski, 399 U. S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1972); Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Allen v. State Board of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L. Ed.2d 1 (1969); Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1969); England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940).
The factors which a court must take into consideration before deciding whether to apply a judicial decision retroactively were recently summarized by the Supreme Court as follows:
First, the decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, e. g., Hanover Shoe, Inc. v. United Shoe Machinery Corp., supra, 392 U.S. at 496, 88 S.Ct. [2224,] at 2233, or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e. g., Allen v. State Board of Elections, supra, 393 U.S. at 572, 89 S.Ct. [817], at 835. Second, it has been stressed that "[w]e must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Linkletter v. Walker, supra, 381 U.S. at 629, 85 S.Ct. [1731] at 1738. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the `injustice or hardship' by a holding of nonretroactivity." Cipriano v. City of Houma, supra, 395 U.S. at 706, 89 S.Ct. [1897] at 1900.
Chevron Oil Co. v. Huson, supra, 404 U.S. at 106-107, 92 S.Ct. at 355; also see Milton v. Wainwright, 407 U.S. 371, 381-382 n. 2, 92 S.Ct. 2174, 33 L.Ed.2d 21 (Stewart, J., dissenting).[7]
In applying the standard to the situation at bar, we think Bell v. Burson, supra, should be applied retroactively to all persons in the second subclass. It appears from the record that at one point in time the Bureau provided pre-suspension hearings but that these were subsequently abolished through legislation. Therefore the defendants have been unable to make any showing, in view of the steady evolution of procedural due process guarantees, that Bell v. Burson upset long established and widely relied upon practices or that the Supreme Court ruling was unexpected or precedent making in a broad sense.
*411 Nor do we think that the retroactive application of Bell v. Burson will swamp the administrative apparatus of the Bureau by vastly increasing the number of pre-suspension hearings. The Bureau is presently providing appropriate due process hearings for those persons affected by the holding of Bell v. Burson; they have made no showing that the extension of this right over a limited period of time to members of the second subclass would have anything more than a marginal effect upon the Bureau's operations. Nor has the Bureau attempted to show what percentage of the subclass would take advantage, or would be materially benefited by the extension to them of the rule of Bell v. Burson.
The defendants agree that the retroactive application of Bell v. Burson will be more costly to the State of Ohio. This may be true, but whereas the "establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication," the "Constitution recognizes higher values than speed and efficiency." In fact:
"One might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones. Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over . . . important interests. . . ."
Stanley v. Illinois, 405 U.S. 645, 656-657, 92 S.Ct. 1208, 1215, 31 L.Ed.2d 551 (1972); Fuentes v. Shevin, supra, 407 U.S. at 90-91, n. 22, 92 S.Ct. 1983; also see Reed v. Reed, 404 U.S. 71, 76, 92 S. Ct. 251, 30 L.Ed.2d 225 (1971); Bell v. Burson, supra; Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Carrington v. Rash, 380 U.S. 89, 96, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965). As the state has offered no substantive grounds for not applying the general principle favoring retroactive application of judicial precedents, the Court concludes that Bell v. Burson, supra, is fully retroactive as to the plaintiffs who are members of the second subclass.
For similar reasons this Court will require the defendants to send notice of the rule of Perez v. Campbell, supra, to all members of the first subclass and to notify members of the second subclass of their right to request a due process hearing in conformity with the holding of Bell v. Burson, supra.
The Supreme Court has often expressed the general policy that, where valuable interests are to be affected at a hearing, the method of apprising the parties of such hearing must be that which is reasonably calculated to ensure actual notice. See, e. g., International Shoe Co. v. Washington, 326 U.S. 310, 320, 321, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1926); Walker v. City of Hutchinson, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178; Armstrong v. Manzo, supra. For this reason, where other and superior means of notification are reasonably practicable under the circumstances, notice by publication has been held to be inadequate. See, Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1968), Covey v. Town of Somers, 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956).
In the case at bar it appears that the defendants possess the administrative capability to send plaintiffs and the members of their respective subclasses *412 actual notice of the new rights to which they are entitled under the holdings of Perez v. Campbell, supra, and Bell v. Burson, supra. The Safety Responsibility Division of the defendant Bureau, which has full responsibility for the enforcement of the Act, sends out more than 7,000 pieces of mail daily. See Defendants Answers to Interrogatories Nos. 1, 10. The additional burden and cost of requiring the Bureau to send notice to the members of these two subclasses in relation to its daily administrative functions is relatively minimal and is outweighed by the constitutional rights herein involved. The defendants will therefore be directed to give notice, either by first class mail, postcard, or at bulk mailing rates. This notice must be reasonably calculated to actually bring recognition of their rights to members of the first and second subclasses. To alleviate administrative problems, if any, the defendants may space these mailings out over a period not to exceed ninety (90) days.
Accordingly, for the reasons set forth above, O.R.C. § 4509.43 is unconstitutional under the Supremacy Clause of the United States Constitution, see Perez v. Campbell, supra, and will be permanently enjoined. The procedures now used by the defendants, see n. 5 supra, satisfy their constitutional obligations as set forth herein, and we will require these, or substantially similar procedures to be used in the future. The procedures in effect for pre-suspension hearings, see n. 6 supra, satisfy the due process requirements as established in Bell v. Burson. So long as the defendants continue to employ these, or substantially similar procedures, no other portion of the Act is presently invalid.
The parties shall, within fifteen (15) days of the receipt of the present Opinion and Order, submit a final judgment entry in conformity with the views expressed herein.
It is so ordered.
NOTES
[1] Any question concerning the distinction between personal and proprietary rights with respect to jurisdiction under 28 U.S.C. § 1343(3) has been foreclosed by the Supreme Court's ruling in Lynch v. Household Finance Corporation, 405 U.S. 538, 552, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). The Court held that § 1343(3) provides federal district courts with jurisdiction to hear any federal constitutional claim arising under 42 U.S.C. § 1983 without regard to the amount in controversy. In so holding, the Court unanimously rejected the position first expressed by Justice Stone in his concurring opinion in Hague v. C.I.O., 307 U.S. 496, 531, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) that § 1343(3) only applied to "personal liberties" and not to rights capable of pecuniary evaluation or "property rights."
[2] We ruled this suit a proper class action in our Order of December 15, 1971.
[3] Due process rights will attach regardless of whether the entitlement to a driver's license is characterized as a "right" or a "privilege." See Bell v. Burson, supra, 402 U.S. at 539, 91 S.Ct. 1586. The Supreme Court has recently "rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a `right' or as a `privilege.'" Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534; also see Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Fuentes v. Shevin, 407 U.S. 67, 88-90, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).
[4] Plaintiff Houser represents the first subclass and plaintiff Weaver and Delbrocco, the second. Even though it appears that certain of the named plaintiffs are in the process of having their individual licenses returned, we still deem them proper representatives of the larger class of persons affected by the Act. See Peto v. Cook, 339 F.Supp. 1300, 1302 (S.D. Ohio E.D.1971) (three judge court), app. pending, (1972); Parmer v. National Cash Register Co., 346 F.Supp. 1043 (S.D.Ohio E.D.1972).
[5] Amended Form BMV-011 Rev. 5/72, attached as Appendix B to Defendants' Brief, supra, is now sent to all first subclass persons; that is, persons against whom judgments have been entered. This form at the present time contains the following language:

It has been officially certified to the Registrar that you have an unsatisfied judgment against you . . You have become subject to the provisions of the Ohio Financial Responsibility Law, Sections 4509.01 to 4509.99, inclusive, of the Revised Code of Ohio. It is hereby ordered that your privilege to operate a motor vehicle upon the streets and highways of this state, and your operator's license evidencing such privilege and license plate registrations issued to you, are suspended.
An order of reinstatement requires:
1. That the judgment be stayed or paid in full, or discharged in bankruptcy, and a certified copy of the entry or discharge in bankruptcy (including proof that the judgment in question was included in the discharge) be presented to this office.
[6] Amended Form BMV-031 Rev. 5/72 attached as Appendix A to Deendants' Brief, supra, has been sent since May, 1972, to all second subclass persons who have been involved in motor vehicle accidents. This form now provides that before posting security these persons are:

"ENTITLED to request a hearing if you believe this action is not proper or in order. At this hearing evidence will be presented concerning whether there is a reasonable possibility of a judgment being rendered against you arising out of the above accident. Such request must be made to the Bureau of Motor Vehicles within 30 days from the date of mailing of this notice. At such hearing you may (a) appear in person, (b) with your attorney, or (c) your attorney may appear for you; and present evidence and examine witnesses apearing for or against you and/or you may present your arguments, position, or contentions in writing."
[7] In Milton v. Wainwright, supra, the Court affirmed on a harmless error rubric a lower court's refusal to give retroactive effect to Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed. 2d 246 (1964). Justice Stewart dissented, being of the opinion that Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) controlled the case. In his opinion, the retroactivity of Massiah was a "spurious issue" because:

An issue of the "retroactivity" of a decision of this Court is not even presented unless the decision in question marks a sharp break in the web of the law. The issue is presented only when the decision overrules clear past precedent, e. g., Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601; Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248; Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388; or disrupts a practice long accepted and widely relied upon, e. g., Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647. Id., 407 U.S. at 381, n. 2, 92 S.Ct. at 2181 (Stewart, J., dissenting).