623 F.2d 383
 Irvin THOMAS, Plaintiff-Appellee,
v.
Frank BLACKBURN, Warden, Louisiana State Penitentiary,
Defendant-Appellant.
 No. 79-2176.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 7, 1980.
Rehearing and Rehearing En Banc Denied Oct. 9, 1980.
 
 Leonard Knapp, Jr., Dist. Atty., Lake Charles, La., Barbara Rutledge, Asst. Atty. Gen., New Orleans, La., for defendant-appellant.
 Robert M. Steeg (Court-Appointed), New Orleans, La., for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before RUBIN and POLITZ, Circuit Judges, and SMITH*, District Judge.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 In Ballew v. Georgia, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978), the United States Supreme Court held that conducting a criminal trial before a jury consisting of only five members deprives the defendant of his right to trial by jury under the sixth amendment as applied to the states by the fourteenth amendment. This habeas corpus petition seeks retroactive application of that decision in order to invalidate Irvin Thomas's conviction by a five-member Louisiana jury. Concluding that Ballew is retroactive, we affirm the district court decision according Thomas relief.
 
 
 2
 Only last month, the Supreme Court considered a similar problem. In Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979), the Court held that a 5-1 verdict convicting the defendant of a non-petty offense violates the right to jury trial. In Brown v. Louisiana, --- U.S. ----, 100 S.Ct. 2214, 64 L.Ed.2d ---- (1980), the Court held that Burch should be applied retroactively. Four members of the Court (Justices Brennan, Stewart, Marshall and Blackmun) joined in the plurality opinion. Justices Powell and Stevens concurred in the judgment but would have limited retroactive application to cases pending on direct review at the time the new constitutional rule was announced. Thomas's original state proceedings were completed in 1972, so his case does not meet the requirements of the concurring opinion. Nonetheless, we conclude that the authority of the Brown decision constrains us to reach the same result.
 
 
 3
 The factors to be considered have been fully set forth in Hankerson v. North Carolina, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977); Michigan v. Payne, 412 U.S. 47, 93 S.Ct. 1966, 36 L.Ed.2d 736 (1973); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); and Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). They were all again reviewed in Brown. The three criteria are:
 
 
 4
 (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.
 
 
 5
 Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199, 1203 (1967).
 
 
 6
 "Foremost among these factors is the purpose to be served by the new constitutional rule." Desist v. United States, 394 U.S. 244, 249, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248, 255 (1969) (footnote omitted). Indeed, the other two factors are determinative "only when the purpose of the rule in question (does) not clearly favor either retroactivity or prospectivity." Brown v. Louisiana, --- U.S. ----, ----, 100 S.Ct. 2214, 2219, 64 L.Ed.2d ----, ---- (1980) (brackets in original). "Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances." Id. (quoting Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388, 395 (1971) (plurality opinion)).
 
 
 7
 To demonstrate that the purpose of Ballew was to "overcome an aspect of the criminal trial that substantially impairs its truth-finding function," Brown v. Louisiana, --- U.S. at ----, 100 S.Ct. at 2219, 64 L.Ed.2d at ----, and to demonstrate that the Supreme Court views the purpose of Ballew as indistinguishable from the purpose of Burch, so that both must be given retroactive application if either is, we need only quote from the analysis in Brown :
 
 
 8
 We think it apparent that the rationale behind the constitutional rule announced in Burch mandates its retroactive application. Mr. Justice Blackmun's opinion in Ballew catalogued the several considerations that led the Court to conclude that the operation of the jury was inhibited to a constitutionally significant degree by reducing its size to five members. Prominent among these concerns was the recognition, supported by a number of empirical studies, that a decline in jury size leads to less accurate factfinding and a greater risk of convicting an innocent person. 435 U.S. at 232-235. In addition, statistical and empirical data established that because of a concomitant decrease in the number of hung juries, a reduction in the size of the jury panel in criminal cases unfairly disadvantages one side the defense. Id., at 236. Lastly, the opinion noted that the opportunity for meaningful and appropriate minority representation diminishes with the size of the jury. Id., at 236-237.
 
 
 9
 Identical considerations underlay our decision in Burch. The threat which conviction by a 5 to 0 verdict poses to the fairness of the proceeding and the proper role of the jury is not significantly alleviated when conviction is instead obtained by the addition of a sixth, but dissenting, ballot. When the requirement of unanimity is abandoned, the vote of this "additional" juror is essentially superfluous. The prosecution's demonstrated inability to convince all the jurors of the accused's guilt certainly does nothing to allay our concern about the reliability and accuracy of the jury's verdict. And while the addition of another juror to the five-person panel may statistically increase the representativeness of that body, relinquishment of the unanimity requirement removes any guarantee that the minority voices will actually be heard.
 
 
 10
 In sum, Burch established that the concurrence of six jurors was constitutionally required to preserve the substance of the jury trial right and assure the reliability of its verdict. It is difficult to envision a constitutional rule that more fundamentally implicates "the fairness of the trial the very integrity of the fact-finding process." Linkletter v. Walker, 381 U.S. 618, 639 (1965). "The basic purpose of a trial is the determination of truth," Tehan v. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453 (1966), and it is the jury to whom we have entrusted the responsibility for making this determination in serious criminal cases. Any practice that threatens the jury's ability properly to perform that function poses a similar threat to the truth-determining process itself. The rule in Burch was directed toward elimination of just such a practice. Its purpose, therefore, clearly requires retroactive application.
 
 
 11
 --- U.S. at ----, 100 S.Ct. at 2222, 64 L.Ed.2d at ---- (footnotes omitted).
 
 
 12
 The recognition that Ballew and Burch share the same purpose mandates that Ballew also be applied retroactively, regardless of good-faith reliance by the state on the former rule or disruptive effect on the administration of justice. See Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388, 395 (1971) (plurality opinion). Moreover, retroactive application of the Ballew rule will not have a devastating impact on the administration of the criminal law. Only two states other than Louisiana Georgia and Virginia have utilized five-person juries, and they did so only in misdemeanor cases. In 1974, by revision of the Louisiana Constitution and of the state's Code of Criminal Procedure, the five-member jury (or as it was called locally, the bob-tail jury) was eliminated.
 
 
 13
 Thus in Louisiana only persons convicted prior to 1974 could attack the statute. It applied only to cases for which a prison sentence was not mandatory. La. Code Crim. Pro. Ann. art. 782 (West 1966) (amended 1974). Some of those convicted by five-member juries were no doubt not sentenced to prison and others sentenced to prison have no doubt been released. The state at oral argument could not give an estimate of the number still in prison but it did not contend that the affected group is large. Furthermore, what the Supreme Court said in Brown is applicable here as well:
 
 
 14
 What little disruption to the administration of justice results from retroactive application of Burch "must be considered part of the price we pay for former failures to provide fair procedures." Adams v. Illinois, (405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202) supra, at 297 (Douglas, J., dissenting).
 
 
 15
 --- U.S. at ----, 100 S.Ct. at 2224, 64 L.Ed.2d at ----.
 
 
 16
 Finally, we consider the state's claim that Irvin Thomas's failure to challenge the five-member jury at the time of his criminal trial, as required by Louisiana's contemporaneous objection rule, La. Code Crim. Pro. Ann. art. 841 (West 1966) (amended 1974), should bar him from bringing his federal constitutional claim in this federal habeas action. The denial of habeas corpus relief in the state courts was not based upon his violation of Louisiana's contemporaneous objection rule but rather was a decision on the merits,[1] and a federal court can, therefore, also reach the merits of his claim for habeas relief, without considering whether he satisfies the cause-and-prejudice test established by Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). County Court v. Allen, 442 U.S. 140, 146-155, 99 S.Ct. 2213, 2219-23, 60 L.Ed.2d 777, 785-791 (1979); Cannon v. Alabama, 558 F.2d 1211, 1216 n.12 (5th Cir. 1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); see Castaneda v. Partida, 430 U.S. 482, 486 n.4, 97 S.Ct. 1272, 1275 n.4, 51 L.Ed.2d 498, 505 n.4 (1977); see also Franks v. Delaware, 438 U.S. 154, 161-163, 98 S.Ct. 2674, 2679-80, 57 L.Ed.2d 667, 675-677 (1978); Mullaney v. Wilbur, 421 U.S. 684, 704 n.*, 95 S.Ct. 1881, 1892 n.*, 44 L.Ed.2d 508, 523 n.* (1975) (concurring opinion of Justice Rehnquist).
 
 
 17
 For these reasons, the decision of the trial court requiring Louisiana either again to try Thomas before a properly constituted jury or to release him is AFFIRMED.
 
 
 
 *
 Senior District Judge of the Northern District of Mississippi sitting by designation
 
 
 [1]
 The opinion of the Louisiana district court denying Thomas's petition for habeas corpus reads in its entirety:
 Defendant was tried and convicted in 1972 for distribution of cocaine and heroin. He was tried by a five-member jury.
 In this application for a writ of habeas corpus, he claims that he was entitled to a twelve-man jury.
 The law in effect at that time, Act 59 of 1971, has been interpreted to entitle a defendant to only a five-member jury. State v. Martin, 290 So.2d 872 (La.1974).
 The application is denied.
 Thomas's petition to the Supreme Court of Louisiana for a writ of certiorari to review this decision was denied without opinion.