Larry Wayne WHITE, Petitioner,

v.

W.J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent.

Civ. A. No. H–81–1661.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 30, 1982.

E. Larry Cantu, Houston, Tex., for petitioner.

Leslie Benitez, Austin, Tex., for respondent.

## MEMORANDUM AND ORDER

SINGLETON, Chief Judge.

### I. HISTORY OF THE CASE

On June 20, 1979, Larry Wayne White was convicted of capital murder in the 185th Judicial District Court of Harris County, Texas for the March 1, 1977 murder of Elizabeth St. John, a seventy-two-year-old woman.[1] The evidence showed that during the course of a robbery, the victim had been strangled, stabbed in the back with a screw driver, and sexually violated, either before or after her death. After his arrest in Myrtle Beach, South Carolina, and while in custody, petitioner confessed to the offense. The court appointed two attorneys to defend. Following a court order, petitioner underwent a pretrial psychiatric examination to determine his competency to stand trial.[2] White was not advised of his right to remain silent during this examination, nor forewarned that anything he said could be used against him at trial.

At the sentencing phase of the trial, the state produced evidence to show that White recently had been convicted of the murder of an eighty-year-old woman, had previously raped and beaten a ninety-two-year-old woman, and had a record for forgery, resisting arrest, and assault and battery. The state called as witnesses a psychiatrist, Dr. John David Nottingham, Jr. and a psychologist, Dr. Jerome Brown. In answer to hypothetical questions, these doctors testified that a person with Larry Wayne White's criminal past would be likely to commit future acts of violence. Petitioner testified on his own behalf; he attributed his violent behavior to his experiences as a Marine in Vietnam and to a problem with alcohol. On the basis of the evidence presented, the jury affirmatively answered the three special issue questions of article 37.071(b) of the Texas Code of Criminal Procedure,[3] and Larry Wayne White was sentenced to death. The execution date was set for July 1, 1981.

Petitioner exhausted his state remedies as required by 28 U.S.C. § 2254[4] and on a writ of habeas corpus to this court, raised those claims of constitutional violations which had been unsuccessfully pursued in the state courts. On June 29, 1981, this court granted petitioner's motion for a stay of execution pending resolution of the claims raised in the writ. Thereafter, a hearing was held on the issue of the constitutionality of the admittance of the psychiatric testimony used at the punishment phase of Larry Wayne White's trial.

### II. ISSUES RAISED IN THE WRIT OF HABEAS CORPUS

Petitioner raises seven claims for relief based on alleged violations of petitioner's constitutional rights. These are:

1. *Texas v. Larry Wayne White,* Cause No. 260,-938.

2. Statement of Facts. *State v. White* (hereinafter referred to as Record.) at 12.

3. These special issues are:
   1. whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with reasonable expectation that the death of the deceased or another would result.
   2. whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
   3. if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

4. Petitioner's conviction was affirmed by the Texas Court of Criminal Appeals on January 21, 1981, in *White v. State,* 610 S.W.2d 504 (Tex.Cr.App.1981). Petitioner filed for state habeas corpus relief in the state trial court on June 23, 1981. On June 25, 1981, that court recommended that relief be denied. On June 26, 1981, the Texas Court of Criminal Appeals also denied relief.

1. The testimony of a court-appointed psychiatrist and psychologist was admitted at the punishment phase of petitioner's trial in violation of petitioner's rights under the fifth, sixth, and fourteenth amendments.[5]

2. Petitioner's confession, obtained by police in violation of those rights secured by the fifth, sixth, and fourteenth amendments, was admitted at petitioner's trial.

3. The ineffectiveness of court-appointed appellate counsel denied petitioner a meaningful appeal and, thus, abridged petitioner's rights under the fifth, sixth, eighth, and fourteenth amendments.

4. Prospective jurors who expressed reservations regarding the assessment of the death penalty were systematically excluded from the jury. Thus, petitioner's sixth, eighth, and fourteenth amendment rights were denied.

5. Texas capital sentencing procedures, as applied to petitioner's case, violate the sixth, eighth, and fourteenth amendments.

6. Petitioner's fifth and fourteenth amendment privilege against compulsory self-incrimination was abridged when he was extensively cross-examined regarding the instant offense at the punishment phase of his trial.

7. Petitioner was denied effective assistance of counsel at trial in violation of the sixth and fourteenth amendments.

After consideration of the evidence and arguments advanced by the state and petitioner, this court has determined that the admission of the psychiatric testimony of Drs. Nottingham and Brown at the sentencing phase of Larry Wayne White's trial violated petitioner's constitutional rights to due process. Consequently, it is incumbent upon this court to grant the writ for habeas corpus relief.[6] The Supreme Court has held, that the death penalty may only be imposed after a fair presentation of all the available evidence. *Smith v. Estelle*, 445 F.Supp. 647, 654 (N.D.Tex.1977); *see Gardner v. Florida*, 430 U.S. 349, 357–58, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977); *Gregg v. Georgia*, 428 U.S. 153, 190–195, 96 S.Ct. 2909, 2933–2935, 49 L.Ed.2d 859 (1976); *see generally Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). A proceeding during which the defendant's due process rights are denied is *a priori* unfair. *Gardner v. Florida*, 430 U.S. at 358, 97 S.Ct. at 1204 (fairness of the sentencing procedure is measured by the due process clause.) Hence, petitioner's death sentence must be vacated.[7]

### III. THE PSYCHIATRIC TESTIMONY

Dr. Nottingham, Jr., a psychiatrist employed by the Harris County Psychiatric Hospital in the Forensic Psychiatry Unit, and Dr. Brown, Chief Psychologist at the Forensic Psychiatry Units in Harris and Jefferson Counties, were called by the state to testify at the penalty phase of petitioner's trial. Pursuant to court order, both doctors had previously interviewed White to determine his competency to stand trial. It is again important to point out that White was not advised of his right to remain silent either before or after the psychiatric examination.[8] The fact that the doctors had had prior contact with petitioner was made clear to the jury. Each doctor was asked his opinion regarding petitioner's propensity to commit further acts of violence. The questions were structured as hypotheticals, but incorporated White's specific criminal

---

5. The fifth and sixth amendments are made applicable to the states through the fourteenth Amendment.

6. This court finds that constitutional violations occurred only in the punishment phase and not in the guilt or innocence proceedings. This grant of petitioner's writ is intended to effect only his sentence and not his conviction.

7. Since this court has determined that relief should be granted because of the fifth and sixth amendment violations, it need not reach petitioner's other claims.

8. White's attorneys had been notified in advance that the psychiatric examinations would be conducted. In this regard, this case is factually different from *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). In the latter, neither formal or informal notification of an impending mental evaluation was given.

history, with which the jury was familiar. Dr. Nottingham was asked the following question:

Assume with me that a defendant named Larry Wayne White was on trial for a capital murder and had been found guilty of that capital murder and it was shown in the evidence—and you're assuming with me that the evidence is correct—that he was convicted in 1972 of assault and battery; convicted in '73 of assault and battery; convicted again in '73 of resisting arrest; convicted of committing a first-degree murder in the State of Florida which occurred February 22nd, 1977; and then convicted in the case on trial of committing another capital murder in the State of Texas. What would be your professional opinion concerning the question which you are familiar with on probability? [9]

Later Dr. Brown was asked:

Assume with me, if you will, a set of facts wherein we would have a person on trial for capital murder and the evidence were to show in our hypothetical that that person had been convicted in December of '72 of assault and battery; in January of '73 of assault and battery; and February of '73 of resisting arrest; and then convicted of committing a capital murder of an 80-year old woman on February 22nd, 1977; and another capital murder of a 71-year old woman on March 2, 1977. Assuming that set of facts, what would be your professional opinion as to this second question, dealing with probability, in a capital murder case? [10]

Immediately after testifying that on the basis of the pretrial examination, he had found Larry Wayne White sane and competent to stand trial, Dr. Nottingham was called upon to describe a sociopathic personality to the jury and to testify as to the poor prognosis for treatment for those diagnosed with that disorder. Dr. Brown gave similar testimony. In addition, in response to direct questions Dr. Brown testified that petitioner was "hedonistic."

## IV. DUE PROCESS AND THE PSYCHIATRIC TESTIMONY

### A. The Fifth Amendment

#### 1. The Hypothetical Questions

Petitioner contends that, based on the recent ruling in *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the use of the psychiatric testimony violated his fifth and sixth amendment rights. Respondent argues that the use of hypothetical questions by the State, in exploring the issue of White's future dangerousness, distinguishes the instant case from *Smith* and removes it from the *Smith* ambit. As is obvious from the arguments of the parties, a decision as to whether petitioner was deprived of his constitutional rights hinges on a determination as to whether *Smith* is controlling precedent.

*Smith* involved facts similar to those of the case *sub judice*. The State of Texas sought the death penalty against Smith, who was indicted for capital murder. Following a court order, Smith underwent a pretrial psychiatric examination to ascertain his competency to stand trial. At the sentencing portion of defendant's trial, the psychiatrist, who had previously interviewed Smith, was called as a witness for the State. When asked about the likelihood of defendant perpetrating criminal acts in the future, Dr. Grigson testified that, based on information obtained at the competency exam, it was his opinion that the defendant was going to commit similar or the same criminal acts in the future if given the opportunity. The federal district court, on a writ of habeas corpus, vacated defendant's sentence. The Fifth Circuit affirmed. The Supreme Court, in an opinion by Chief Justice Burger, held that the use of Dr. Grigson's psychiatric testimony at defendant's sentencing hearing transgressed Smith's fifth and sixth amendment rights and vacated the sentence of death. In discussing the fifth amendment issue, the Court ruled that this amendment applies to

9. Record at 1681.

10. *Id.* at 1700–01.

the penalty phase of a trial as well as to the guilt phase. The Court said, "Just as the Fifth Amendment prevents a criminal defendant from being made 'the deluded instrument of his own conviction,' it protects him as well from being made the 'deluded instrument' of his own execution." *Id.* (citations omitted). The court reasoned that the principles underlying *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), applied equally to court-ordered pretrial psychiatric examinations as well as to custodial interrogations. In each instance the goal of *Miranda* to counteract pressures on an individual in custody from ignorantly sacrificing his fifth amendment rights is implicated. *Estelle v. Smith,* 451 U.S. at 466, 101 S.Ct. at 1874. Defendant Smith had not been advised of his right to remain silent; nor had he been forewarned that any disclosures made during the mental evaluation could be used against him as evidence that, if convicted, he should be put to death. Therefore, he was unable to make a knowing and voluntary waiver of his right against self-incrimination. Only in the event that a defendant makes an informed and voluntary waiver, after adequate notice of the purpose and uses of the psychiatric interview, the Court ruled, may a criminal defendant's statements made during such an interview be used as the basis for psychiatric testimony at trial. *Id.* at 467–69, 101 S.Ct. at 1875–76. The Court stated:

> Volunteered statements are not barred by the Fifth Amendment, but under *Miranda v. Arizona, supra* we must conclude that, when faced while in custody with a court-ordered psychiatric inquiry, respondent's statements to Dr. Grigson were not "given freely and voluntarily without any compelling influences and, as such, could be used as the State did at the penalty phase only if respondent had been apprised of his rights and had knowingly decided to waive them.

*Id.* at 469, 101 S.Ct. at 1876.

In addition to the fifth amendment violation, the Court in *Smith* found that defendant's sixth amendment right to assistance of counsel had been denied by the introduc-tion of the same adverse psychiatric testimony. The competency exam took place after Smith had been indicted and an attorney appointed to represent him. His right to counsel had attached when Dr. Grigson examined him at the Dallas County Jail, and their interview proved to have occurred at a "critical stage" of the aggregate proceedings against respondent. *Id.* at 470, 101 S.Ct. at 1877. Yet, defense counsel was not apprised in advance of the scope of the examination—that it would comprehend the issue of defendant's propensity for future violence. Because of the significance of the ultimate purpose of interview, defendant was denied the effective assistance of his attorneys in deciding whether to participate in the examination. The Court stated, "The decision to be made regarding the proposed psychiatric evaluation is 'literally a life or death matter' and is 'difficult . . . even for an attorney. . . . [A] defendant should not be forced to resolve such an important issue without 'the guiding hand of counsel'." *Id.* at 471, 101 S.Ct. at 1877, *quoting Smith v. Estelle,* 602 F.2d 694, 708 (5th Cir.1979).

In the present case, the State moved for the psychiatric evaluation of petitioner, which was subsequently ordered by the court. This examination was ordered even though defense attorneys had not put into issue White's competency to stand trial. It has not been shown, nor has the respondent alleged, that petitioner was advised of his right to refuse to submit to the mental examination; that petitioner was informed that the contents of it might be used against him at trial; or that he had knowingly and intelligently relinquished his fifth amendment right. *See Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (1981); *Miranda v. Arizona,* 384 U.S. 436, 469, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966).

Respondent contends that the fifth amendment is not implicated because, unlike in *Smith,* the testimony of Drs. Brown and Nottingham was not based on the content of the psychiatric evaluation. Respondent poses the hypothetical questions as barriers between petitioner's disclosures at

the pretrial examination and the testimony of the doctors at the sentencing. This court disagrees. This court simply does not credit the State's assertions that the psychiatric prognosis of Larry Wayne White's future dangerousness was not influenced by and derived from information gleaned from the pretrial evaluation. The doctors had previously interviewed the petitioner; they knew they were testifying at the sentencing hearing of Larry Wayne White. The facts of the hypotheticals were the facts of White's criminal history, and the hypotheticals followed closely upon questions as to petitioner's competency to stand trial. In one hypothetical, Larry Wayne White's name was used. A hypothetical is not a hypothetical just because it is initiated by the word "assume" or "if." The hypothetical questions asked Drs. Nottingham and Brown hover too closely over the contents of the psychiatric evaluations to be believable as mere suppositions. Moreover, at the evidentiary hearing, Dr. Brown stated that, in all honesty, he could not say that the examination of defendant had not influenced his testimony.

Even assuming *arguendo* that the testimony of the doctors was not based on the psychiatric interview with Larry Wayne White, the juxtaposition of the testimony, as well as the testimony itself, gave the appearance to the jury that the opinions as to petitioner's propensity for future violence were so derived. The jurors were aware that the doctors had conducted the pretrial psychological evaluations. The queries about antisocial personalities and future dangerousness followed on the heels of questions about White's competency to stand trial. The jurors were familiar with petitioner's criminal record. They could not miss the implication of the state's identification of the subject of the hypothetical as Larry Wayne White. When all these factors are considered, it is clear that the jurors were incapable of distinguishing between the hypothetical and the case of petitioner before them.

The fifth amendment commands that "[no] person ... shall be compelled in any criminal case to be a witness against him-self." This court is of the opinion that the strictures of this amendment encompass the testimony given by Drs. Nottingham and Brown. The fifth amendment does not operate in a vacuum, but in relation to the jury. If the jury is unable to distinguish between a hypothetical and the case before it, and this inability was not fortuitous, but a result of the State's deliberate actions, then the petitioner was, indeed, compelled to be a witness against himself in abrogation of this constitutional right.

### 2. The Direct Questions

■ In addition to the hypotheticals, in one instance, Dr. Brown was asked a direct question about petitioner.

The exchange went as follows:

Q: (By the State) Would you explain to us, sir, what a sociopath is, or an antisocial personality?

A: This is a type of personality disorder characterized principally by an absence of remorse or guilt on the part of a person for any past actions that he may have committed. ... These people are typically self-centered; they're hedonistic; they're oriented more or less toward the moment and consider little in terms of the future consequences in evaluating the impact of their behavior or what might happen to them.

Q: Does the word "hedonistic" mean someone who feels that pleasure or fun is the most important thing in life?

A: Or one of the most important things, or thrill.

Q: From your evaluation of this defendant, I noticed that you considered him to be hedonistic?

A: Yes, I did.

Respondent argues that consideration of Dr. Brown's response to the question concerning hedonism is barred by the rule of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), since defense counsel entered no objection to it at the time it was offered. The State also asserts that the statement was only a minor and unimportant part of Dr. Brown's testimony and not related to the evidence concerning

White's future dangerousness. Preliminarily, this court must state that it considers very little that goes on at trial to be minor and unimportant, when a person's life is at stake. The fifth amendment does not speak in terms of quantity nor qualify its prohibition by stating that a person may be compelled to be a witness against himself just a little. It is an absolute prohibition. Moreover, this court feels that a direct assertion by the psychologist that White was hedonistic had a great impact on the jury and was devastating to petitioner's effort to be sentenced to life rather than death.

With regard to the rule in *Sykes,* it is well-settled that a federal court is not precluded from considering the merits of a ground for habeas corpus relief by reason of a failure to make a contemporaneous objection, when the state courts have already reached the merits of the claim, rather than relying on the contemporaneous objection rule to deny relief. *Miller v. Estelle,* 677 F.2d 1080, 1084 (5th Cir.1982); *Thomas v. Blackburn,* 623 F.2d 383, 386 (5th Cir.1980), cert. denied, 450 U.S. 953, 101 S.Ct. 1413, 67 L.Ed.2d 380 (1981). This principle holds true no matter how cursorily or summarily the state court disposes of the merits of a petitioner's claim. *Miller v. Estelle,* 677 F.2d at 1084. *See e.g., Thomas v. Blackburn,* 623 F.2d at 386 n. 1. In this case the state courts failed to explain whether the writ of habeas corpus was denied on the merits or because of a procedural default.[11] However, failure to do so creates a presumption that the decision to deny relief was based on the merits and does not bar federal review. *Bell v. Watkins,* 692 F.2d 999 at 1004–05 (5th Cir.1982).

Another reason for not deferring to the contemporaneous objection rule in this instance is that the same fifth amendment issue implicated by Dr. Brown's statement about hedonism is already being considered in connection with the use of the hypothetical questions. Therefore, in so far as the purpose of the Texas contemporaneous objection rule is to "encourage the presentation and resolution of constitutional issues at trial," *St. John v. Estelle* 563 F.2d 168, 172 (5th Cir.1977) (Tjoflat, J., dissenting), a strict adherence to the rule in this case would not further this purpose.

Having cleared the hurdle of *Sykes,* the issue of the constitutionality of Dr. Brown's statement may be reached. Therefore, although this court does not base its vacation of petitioner's sentence solely upon Dr. Brown's statement, it concludes, for the reasons elucidated in *Smith* and discussed earlier in this opinion, that this statement alone is enough to invalidate petitioner's sentence.

### B. The Sixth Amendment Violation

■ Petitioner's sixth amendment right had attached at the time he submitted to the pretrial psychiatric interviews. White had been indicted and counsel appointed; adversarial proceedings had been initiated against him. There was vital need for his attorney's aid in deciding whether and how much to participate in the psychological evaluations. *Estelle v. Smith,* 451 U.S. at 469–70, 101 S.Ct. at 1876; *Kirby v. Illinois,* 406 U.S. 682, 688–89, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972) (plurality opinion); *Smith v. Estelle,* 602 F.2d 694, 708–9 (5th Cir.1979). Although it is conceded that, given the character of a psychiatric examination, the need for sixth amendment protection does not go so far as to mandate the presence of counsel during the interview itself, *Smith v. Estelle,* 602 F.2d at 708; *United States v. Cohen,* 530 F.2d 43, 47–48 (5th Cir.1976), the Supreme Court has recognized that a defendant has a right to consult with his attorney before the interview. *Estelle v. Smith,* 451 U.S. at 470–71, 101 S.Ct. at 1876–77; *Gholson v. Estelle,* 675 F.2d 734, 743 (5th Cir.1982).

■ In answer to petitioner's allegations of sixth amendment violations, respondent

---

11. The Texas Court of Criminal Appeals denied petitioner's writ of habeas corpus without comment. *Ex Parte Larry Wayne White,* No. 1059 (Tex.Cr.App. June 26, 1981) (per curiam). The state trial court stated, "Petitioner has failed to demonstrate that his conviction was improperly obtained. Accordingly, it is recommended to the Texas Court of Criminal Appeals that his request for stay of execution and new trial be denied."

contends that White did have assistance of counsel prior to the examination, and that, thus, these rights are not implicated. The State bases this contention on court-appointed defense counsel's statement at the evidentiary hearing that it was his practice to "advise all clients not to discuss incriminating matters with the examiners." [12]

The Fifth Circuit has made it clear that the protection of the sixth amendment requires something more such than cursory and vague counselling by petitioner's attorney that, defendant is "not to discuss incriminating matters with the examiners." In *Smith* the circuit court elaborated on the crucial role counsel is to play in advising his client on the complex question of whether to submit to a psychological evaluation: "This is a vitally important decision, literally a life or death matter. It is a difficult decision even for an attorney; it requires a knowledge of what other evidence is available, of the particular psychiatrist's biases and predelictions, of possible alternative strategies at the sentencing hearing." *Smith v. Estelle,* 602 F.2d at 708–09, *quoting Powell v. Alabama,* 287 U.S. 45, 57, 53 S.Ct. 55, 59, 77 L.Ed. 158 (1933). In *Gholson v. Estelle,* 675 F.2d at 743, n. 9, the court dismissed the government's argument that the defendant's sixth amendment rights had not been violated because defense counsel may have counselled their clients in general terms about possible future psychiatric examinations. The court said: "The sixth amendment's protection contemplates more than a casual discussion between attorney and client regarding the vague possibility that the client may be examined at some indefinite time in the future for the purpose of aiding in the determination of whether he should be executed." *Id.* at 743.

In the case *sub judice,* it is apparent that the sixth amendment standard of the Fifth Circuit has not been met. There has been no showing that the kind of well thought-out, individually-tailored counselling session between attorney and petitioner mandated by the Supreme Court and Fifth Circuit preceded the examination.[13] Therefore, this court is of the opinion that petitioner's sixth amendment right to the assistance of counsel was violated by the introduction of the doctors' testimony at the sentencing hearing.

## V. PREDICTIONS OF FUTURE DANGEROUSNESS

■ This court has serious reservations about the use of psychiatric predictions based on hypotheticals and doubts their validity when the doctor has had no previous contact with the defendant. The prevailing view among psychiatrists and professional psychiatric associations, a view to which this court subscribes, is that to the extent that long-range dangerousness can be predicted (a view not accepted by the psychiatric community),[14] an opinion as to an individual's future penchant for violence which does not follow extensive examination and is not based on a great deal of complex and in-depth information, is not a professional, but a lay opinion.[15] However, when this lay opinion is proffered by a witness bearing the title of "Doctor," its impact on the jury is much greater than if it were not masquerading as something it is not.

## VI. CONCLUSION

For the reasons given above, this court has determined that petitioner Larry Wayne White's fifth, sixth, and fourteenth amendments were violated by the introduc-

12. Evidentiary Hearing of August 9, 1982, at 83–184 (hereinafter cited as E.H.).

13. Petitioner White testified that he was never advised by either of his attorneys about his constitutional rights in relation to the competency examinations. E.H. at 10–11. Court-appointed trial counsel, Armando Martinez, also testified that he had not advised petitioner of these rights. E.H. at 28.

14. *See* Brief Amicus Curiae for the American Psychiatric Assoc. at 11–17, *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

15. E.H. at 93–99 (Testimony of Dr. Jane Preston, expert witness for petitioner).

tion of testimony by Drs. Nottingham and Brown at the penalty phase of petitioner's trial. In addition, this court is of the opinion that prohibiting the type of psychiatric testimony at issue in this case would go a long way toward insuring the kind of fair judicial proceedings that is mandated by the Supreme Court.

Accordingly it is ORDERED, ADJUDGED, and DECREED that petitioner's writ of habeas corpus be, and the same is, GRANTED.